**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **MARK C. JOHNSON,** | Case. No. 3:19-cv-00837-DJN |
| Plaintiff, | Judge David J. Novak |
| v. | |
| **PENNYMAC LOAN SERVICES, LLC, et al.,** | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT PENNYMAC LOAN SERVICES LLC'S
MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

**I.    STATEMENT OF THE CASE**

PennyMac Loan Services, LLC ("PennyMac") moves for an order awarding sanctions, pursuant to FED. R. CIV. P. 11, against Plaintiff, Mark C. Johnson, ("Plaintiff") as a result of Plaintiff's filing and refusal to withdraw the Petition to Confirm Arbitration Award ("Petition"). *See* Dkt. No. 1.  As set forth more fully below, the Petition is a completely fraudulent and improper attempt by Plaintiff to enforce an illegitimate multi-million dollar arbitration award that is based upon a non-existent contract.

Plaintiff claims that he and PennyMac entered into an agreement which required, in part, that the parties arbitrate unspecified claims.  Based on the purported agreement, which was not provided with the Petition, Plaintiff claims to have participated in an arbitration hearing with an "arbitration" company called Sitcomm Arbitration Association ("SAA") and received an arbitration award against PennyMac for $2.25 million.  **But make no mistake, there is no**

**contract upon which any such award could be entered and no such arbitration hearing was ever held between Plaintiff and PennyMac**.

The only contractual relationship between the Plaintiff and PennyMac is in connection with Plaintiff's $272,000.00 home mortgage loan on the property at 451 May Lane, Louisa, VA 23093 (the "Property") and it does not contain an arbitration provision of any kind. Plaintiff defaulted on his obligations under his mortgage, to which PennyMac is the servicer, and appears to be using the Petition, and the underlying Award that is attached thereto, as a bogus scheme to defraud the court and obtain a quick – and illegitimate – judgment against PennyMac to offset his mortgage obligations. The Petition and the Award are supported by no facts. Moreover, Plaintiff's Petition is not warranted by existing law or any non-frivolous extension thereof. Thus, Plaintiff is in violation of Rule 11 of the Federal Rules of Civil Procedure, and his refusal to withdraw his petition subjects him to sanctions.

## II.    STATEMENT OF FACTS

### A. PLAINTIFF ATTEMPTS TO AVOID HIS DEBT OBLIGATIONS TO PENNYMAC

PennyMac is the current servicer of a $272,000.00 mortgage loan obtained by Plaintiff on the property located at 451 May Lane, Louisa, VA 23093 (the "Property"),[2] which PennyMac has serviced since June 30, 2015. In mid-2018, Plaintiff began pushing the false narrative that his debt to PennyMac was fully satisfied, and in early 2019, Plaintiff sent PennyMac a series of cryptic, mostly handwritten, letters in which he attempted to pass off a number of "Government Remittance Coupons" as legal tender. He also purports to have instructed PennyMac to remit those "Coupons"

---

[2] A true and correct copy of the Declaration of Johnny Morton ("Morton Dec.") is provided herewith as **Exhibit A**. Attached to that declaration as **Exhibit 1** is a true and correct copy of the Note. *See id*. at ¶ 3. A true and correct copy of the Deed of Trust for the Property is attached to the declaration as **Exhibit 2**. *See id*. at ¶ 4. Neither document includes an arbitration provision which required the parties to arbitrate any disputes thereunder.

to the U.S. Treasury, which, according to Plaintiff, had supposedly agreed to pay Plaintiff's mortgage debt. Thereafter, in July 2019, after PennyMac elected not to honor the illegitimate "Coupons" as valid forms of payment, Plaintiff sent to PennyMac a so-called "Conditional Acceptance for Value and Counter Offer/Claim for Proof of Claim and Tender of Payment Offering". *See* Morton Dec., ¶ 18 & Exh. 5, (the "Conditional Acceptance").[3]

In this document, Plaintiff purports to "conditionally accept" the terms of some undefined offer, and through PennyMac's supposed "tacit acquiescence" of the Conditional Acceptance, create a new contract between PennyMac and Plaintiff – one that superseded all of the other contracts between the parties. *See* Conditional Acceptance at 3-4. The Conditional Acceptance further purports to obligate PennyMac to submit to arbitration to resolve any disputes arising out of the non-existent agreement. *Id*. at 6. Plaintiff's attempt to cancel the Note and Deed of Trust and supplant them with the Conditional Acceptance is absurd and a nullity. PennyMac never agreed to the terms of the Conditional Acceptance, and PennyMac's supposed refusal to respond to it did not create any new contract, by tacit acquiescence or otherwise. Nothing about the Conditional Acceptance or its terms are real, and nothing about that document created a new contract between PennyMac and Plaintiff.

      **B.    PLAINTIFF SUBMITS HIS FAKE CONTRACT TO AN ILLEGITIMATE ARBITRATION COMPANY, OBTAINING A SHAM AWARD**

With full knowledge that the Conditional Acceptance was not a real contract, Plaintiff nonetheless submitted that document to a fake arbitration company – SAA – that is widely-known to assist individual debtors in perpetrating exactly this type of fraud by issuing fake arbitration

---

[3] In the "Conditional Acceptance," Plaintiff makes a series of unreasonable demands, including that PennyMac provide information to rebut a list of conspiratorial "claims," including, among other things, with regard to some "national emergency" pursuant to which "all banking business have (sic) been suspended" and that the U.S. Government has "declared legal tender to be valueless.". *Id*. at 1-2.

awards, based on arbitration hearings that were never noticed or conducted, pursuant to arbitration provisions in contracts that never existed. Plaintiff claims that SAA issued a Final Arbitration Award (the "Award") for $2.25 million to Plaintiff. *See* Dkt. No. 1-1.

Not only is Plaintiff attempting to pass off his sham $2.25 million Award as valid, but this same debt elimination scam is being executed across the country by various individuals, all with the guidance, assistance and cooperation of SAA.[4] This pretend "arbitration" company and its agents provide counterfeit paperwork and offer direction to individual debtors on how to perpetrate this fraud scheme and avoid their debt obligations.[5]

---

[4] PennyMac has located the following actions, filed in various Federal Courts, which appear to involve the same or a substantially similar fraudulent scheme that is being perpetrated by Plaintiff and SAA in this action:

- *Meekins v. Lakeview Loan Servicing, LLC, et al.*, 3:29-cv-00501 (E.D. Va.);
- *Hosea v. Dimon, et al.*, 2:19-mc-00034 (E.D. Va.);
- *Kahapea v. PennyMac Loan Services, LLC*, 1:19-mc-28 (N.Mex.)
- *Imperial Industrial Supply Co. et al. v. Thomas, et al.*, 2:19-cv-129 (S. D. Miss.);
- *Cannae Holdings v. Innovated Holdings, Inc. et al*, 19Sl-CC01658 (St. Louis Cir. Court);
- *Grant v. Bank of America*, 8:19-cv-01977 (C.D. Cal.);
- *Campbell v. FCI Lender Service, Inc. et al.*, 1:19-cv-02368 (E.D. NY);
- *Kalmowitz v. Federal Home Mortgage Corporation, et al.* 6:19-mc-00010 (E.D. Tex.);
- *Bruce v. Wilmington Savings Fund Society, et al*, 2:18-cv-02555 (D.S.C.);
- *Brown v. Ally Financial Inc.*, 2:18-cv-70 (S.D. Miss.);
- *Teverbaugh v. Lime One Capital, LLC*, No 2:19-mc-159 (S.D. Miss.); and
- *US Bank NA v. Nichols*, 19-cv-482 (N.D. Ok.).

In *Meekins v. Lakeview*, this Court recently recognized the frivolous nature of the scheme that Plaintiff is attempting to perpetrate in conjunction with SAA here. In that case, on December 30, 2019, the Court issued a Memorandum Opinion denying the Motion to Confirm the Arbitration Award with prejudice and ordering the petitioner to show cause why his conduct did not violate FED. R. CIV. P. 11(b). True and correct copies of the Court's Memorandum Opinion and corresponding Order in the *Meekins* matter are attached collectively as **Exhibit B**.

Other Courts have recognized the frivolous nature of the schemes that involve SAA. For instance, very recently the Southern District of Mississippi in *Brown v. Ally Financial Inc.*, Civ. Action No. 2:28-cv-70 (S.D. Miss. Dec. 10, 2019) (Dkt. No. 47) issued a Memorandum Opinion and Order and Order to Show Cause why the plaintiff in that action should not be sanctioned for seeking confirmation of an arbitration award under circumstances that are substantively identical to this action. A true and correct copy of the Memorandum Opinion and Order and Order to Show Cause in the *Brown* matter are attached hereto for the Court's convenience as **Exhibit C**.

[5] SAA's website, includes the follow statement describing its mission:

> The SITCOMM ARBITRATION ASSOCIATION - SAA
> We are small group of individuals who have come together with our unique skills and history to help those who seek to resolve their contractual disputes and other matters in a peaceful setting.

4

PennyMac was never notified that Plaintiff had initiated an arbitration based on this non-existent contract to arbitrate. Indeed, PennyMac first learned that Plaintiff had tried to engage in this subterfuge on October 14, 2019, when it received a piece of cryptic and non-descript correspondence from SAA, suggesting that an arbitration hearing of some sort was to take place, at an undisclosed location, and relating to an unknown dispute. *See* Morton Dec. at ¶ 9 & Exh. 4. Thereafter, on November 12, 2019, after this supposed "hearing" took place, Plaintiff sent a copy of the fake Award to PennyMac. A cursory examination of the Award, however, reveals it to be a complete sham. *See* Dkt. No. 1-1. For example, the Award states in its preamble that "[t]he parties have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration …" *Id*. at 1. PennyMac was never apprised of the existence of any arbitration proceeding. Furthermore, there is no underlying agreement to arbitrate. The Award then speciously claims that the "arbitrator" – Kirk Gibbs – was "appointed" to act as arbitrator pursuant to the Federal Arbitration Act. *Id*. at ¶ 3. PennyMac never consented to the appointment of any arbitrator, let alone Kirk Gibbs, an unknown individual with no known training, skill or legal acumen qualifying him to act as an arbitrator. Next, the Award falsely claims that "[a]n arbitration hearing was held on Date (sic) at which time the Arbitrator reviewed all contractual agreements and document evidence submitted by the parties in this matter." *Id*. at ¶ 4; *see also* ¶¶ 7.iii – iv. Leaving aside the Award's glaring failure even to fill out the sham award template properly, no

---

Our goal in our aim is to help individuals reduce the burden on government, their courts, and their other administrative agencies. One way we do this is by helping the consumer with a preformatted generalize contract that includes all of the elements necessary for enforcement.

As was brought out by the state of New Hampshire, the corporate state officials have by their silence deceived the American people, we are attempting to help balance or right the wrong/ship.

*See* www.saalimited.com//More%20about%20us.html.

"hearing" ever occurred. Even if one was conducted, PennyMac was never properly notified of any arbitration proceeding and at no time did it submit any evidence for consideration by Kirk Gibbs.

In Paragraph 6 of the Award, the arbitrator found that PennyMac and Plaintiff somehow "entered into a written, irrevocable, binding contractual agreement which included an arbitration clause" on or around ***June 6, 2015***. *Id*. at ¶ 6 (emphasis added). This "finding" however, is an impossibility, since PennyMac did not begin servicing Plaintiff's loan until June 30, 2015, and had never, to its knowledge, had any contact with Plaintiff before that time. *See* Morton Dec. at ¶ 5 & Exh. 3 (Servicing Transfer Notice). The Award then contradicts itself, concluding that PennyMac "failed to respond to the contractual agreement mailed with proof of service by the Claimant on ***April 1, 2015*** which constituted an act of 'tacit acquiescence.'" *Id*. at ¶ 7.x (emphasis added). PennyMac is unaware of any "contractual agreement" that was mailed with "proof of service by Claimant" in April 2015, **several months before PennyMac began servicing Plaintiff's loan**.

C. **PENNYMAC SENDS A RULE 11 LETTER TO PLAINTIFF**

Immediately recognizing the fraudulent nature of the Petition, on November 25, 2019, PennyMac sent to Plaintiff a cautionary letter, demanding that Plaintiff dismiss his Petition because it was "filed for an improper purpose and is a fraudulent attempt to unlawfully obtain a judgment against PennyMac without any factual or legal basis." *See* **Exh. D**, Pickard Dec. at ¶ 4. In that same correspondence, PennyMac detailed the fact that SAA was not a legitimate arbitration company, that no contract requiring PennyMac to arbitrate existed, that the Award was plainly the product of fraud that was replete with demonstrable falsehoods. *Id*. Notwithstanding this letter and the warnings contained therein, Plaintiff refused to dismiss his Petition. *See id*. at ¶ 6. Instead, he continues to pursue this fraudulent endeavor, needlessly consuming the valuable resources of

this Court, and requiring that PennyMac expend considerable resources to defendant against this frivolous action.

### III. LAW AND ANALYSIS

#### A. RULE 11 SANCTIONS ARE PROPER UNDER THE CIRCUMSTANCES

Rule 11 of the Federal Rules of Civil Procedure provides, in part, that in presenting any document to the court, a party certifies that, to the best of his or her knowledge, information, and belief, the document is not being filed for an improper purpose; the claims are warranted by existing law; and the factual contentions have evidentiary support. FED. R. CIV. P. 11(b). If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court has discretion to impose sanctions on the attorneys, law firms, or parties responsible for the violation. FED. R. CIV. P. 11(c)(1). Further, a party's status as a *pro se* litigant will not preclude sanctions under Rule 11. *Schnader Harrison Segal & Lewis LLP v. Hershey*, C.A. No. 1:12-cv-00928-AJT-IDD, 2013 WL 12099323 (E.D. Va. Aug. 8, 2013) citing *Abbott v. Suntrust Mortgage, Inc.*, C.A. 3:08-cv-665, 2009 WL 971267, *4 (E.D. Va. Apr. 8, 2009) ("Litigants proceeding *pro se* are liable for sanctions under FED. R. CIV. P. 11(b) for filing frivolous pleadings when those pleadings lack any factual support.").

**1. The Petition Was Filed To Harass PennyMac.**

A party who files a pleading for an improper purpose, such as harassing or punishing the opposing party, violates Rule 11(b)(1) and may therefore be sanctioned. The test for whether a party acted with an improper purpose is objective—that is, whether the party's outward behavior manifested an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (en banc). A court may infer from "solid evidence of a pleading's frivolousness" that a pleading was filed for an improper purpose. *Id.* at 1365.

Plaintiff knows that PennyMac never agreed to accept the terms of the supposed "Conditional Acceptance" as alleged in the Petition and the Award. He knows that none of the facts set forth in the supposed Award have any evidentiary support and that, on the contrary, the Award is built upon a series of blatant falsehoods. It is, as the Court in *US Bank Nat'l Ass'n v. Nichols*, Case No. 19-cv-482-JED-FHM, 2019 WL 4276995 (N.D. Okla. Sept. 10, 2019), described it, "a bizarre jumble of inconsistent, nonsensical word salad" full of "legally bizarre determination[s] contrary to hornbook contract law." *Id.* at *4.[6] Moreover, it is full of patently false "findings" that completely vitiate is enforceability.

The Petition is the culmination of a baseless scheme to use the legitimate power of this court for the improper purpose of obtaining a money judgment against PennyMac and/or to avoid or offset the Plaintiff's default on his Mortgage. *Cf. Townsend*, 929 F.2d at 1366 (district court could infer that plaintiff vindictively named defendant from fact that allegations of complaint were frivolous and fact that defendant had been law firm that opposed plaintiff in earlier state court action). The Court should reject the Petition as a frivolous attempt to harass and extort PennyMac and should award an appropriate sanction to deter similar behavior in the future.

### 2. There Is No Valid Underlying Agreement to Arbitrate.

Plaintiff's Petition purports to arise under the Federal Arbitration Act ("FAA"). As a threshold matter, Plaintiff knows full well that, other than his Loan Documents, he has no contract[7] with PennyMac, let alone one that requires PennyMac to submit to arbitration. Furthermore, Plaintiff knows that he has no claims against PennyMac and has suffered no harm. Despite all of

---

[6] A true and correct copy of the *Nichols* Memorandum Opinion is attached hereto as **Exhibit E**.
[7] While Plaintiff's "Conditional Acceptance" documents may refer to "tacit acquiescence" to a new contract, nothing in the law or the facts found here justify the creation of any contract by "tacit acquiescence." *See Nichols*, 2019 WL 4276995 at *4 ("Despite Plaintiff's contentions, 'tacit acquiescence' to a 'conditional acceptance for value' does not create a contractual relationship"); *see also Kalmowitz v. Federal Home Mortgage Corporation, et al.*, Civ. No. 6:19-mc-00010 (E.D. Tex., October 22, 2019) (Report and Rec., Dkt. No. 9 at p. 5-6). A true and correct copy of the *Kalmowitz* Report and Recommendation is attached hereto as **Exhibit F**.

this, Plaintiff has taken a non-existent contract and submitted it to an impostor "arbitration" company, SAA, knowing that SAA would convert this fake contract into an equally fake Award.

With that goal achieved, and the phony Award in hand, Plaintiff has now filed this frivolous action, hoping to continue building on the series of phony papers until he gets a legitimate one – a judgment issued by a Federal Court. This conduct violates Rule 11(b)(3) and is sanctionable. *See Schnader Harrison Segal & Lewis LLP*, 2013 WL 12099323 (awarding sanctions against a *pro se* counterclaimant who asserted a frivolous series of counterclaim claims against his prior legal counsel, including breach of contract, seeking an award of $12 million); *see also Abbott v. Suntrust Mortgage, Inc.,* 2009 WL 971267, (holding that pro se plaintiffs violated Rule 11 in filing a multitude of legally unsupported documents purporting to satisfy a mortgage debt and which also sought $20,000,000 in damages for alleged bad faith and criminal conduct on the part of the mortgage company); *Jones v. International Riding Helmets, Ltd*., 49 F.3d 692, 694–695 (11th Cir. 1995) (awarding sanctions where complaint was not well-grounded in fact at the time it was filed); *Medical Emergency Serv. Assocs. v. Foulke*, 844 F.2d 391 (7th Cir. 1988) (Rule 11 sanctions were appropriate where a brief review of the relevant employment contracts would have revealed the correct employment status of certain defendants).

It is well established that a contract requires a meeting of the minds, *i.e.*, the mutual assent of both parties to the contract. *See Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (1981) ("there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract."). There is nothing in the Petition or the Award that remotely suggests that PennyMac ever ratified, approved, or signed a contract as Plaintiff alleges. The lack of legal merit is apparent on the face of the Petition and related documents, as they do nothing more than recite legal jargon, conspiracy theories, and conclusory

9

statements. Plaintiff knows these documents are fake. Even if he is willfully ignorant of this fact, if Plaintiff had made even a cursory inquiry prior to filing the Petition, he would have known that a binding contract cannot be formed by such 'tacit acquiescence.' *See*, *e.g.*, *Antonio De Carlo Sheppard v. United States*, No. 11-295 C, 2011 U.S. Claims LEXIS 2365, at *14-15 (Fed. Cl. Dec. 20, 2011) ("It is clear, however, that silence does not, except in unusual circumstances not present here, constitute acceptance of an offer to enter into a contract.").

Moreover, as Plaintiff has not attempted to advance an argument for a modification of or departure from existing law, his pursuit of the Petition cannot be justified on that basis. By filing and pursuing a claim that has no basis in law, Plaintiff violated Rule 11(b)(2). *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

### 3. No Arbitration Was Noticed or Held and Plaintiff Has No Claims Against PennyMac Which Would Substantiate an "Arbitration" Award, Much Less a Multimillion Dollar One

Even if there was some purported agreement to arbitrate – which there is not – PennyMac was not properly notified of the purported arbitration before it allegedly occurred. *See* Morton Dec. at ¶¶ 9-15. Having failed to notify PennyMac of the alleged intent to arbitrate, the Award cannot be held to be valid. Thus, the Award has no basis in fact, and the Petition finds no evidentiary support. Rule 11(b)(3) prohibits this conduct, and makes it a sanctionable offense to continue to prosecute a matter knowing it is lacking any factual basis.

### 4. An Award of Attorney's Fees Is Warranted to Deter Further Misconduct.

This court may exercise its discretion to impose sanctions against Plaintiff for his violations of Rule 11(b). *See Roundtree v. United States*, 40 F.3d 1036, 1040 (9th Cir. 1994). Rule 11 sanctions are to be imposed with caution, *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994), and should be limited to those sanctions necessary to deter the offender and those similarly situated

from engaging in similar conduct. *See* FED. R. CIV. P. 11(c)(4). In determining whether to impose sanctions, the court may consider the following factors, among others: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; and (6) what effect it had on the litigation process in time or expense. *See* FED. R. CIV. P. 11, advisory committee notes of 1993. As the Court in *Brown v. Ally Financial, Inc.*, Civ. No. 2:18-cv-70 (Dec. 10, 2019, S.D. Miss.), warned, "[t]his is not this Court's first time to address this type of nonsense, … and the Court warns all parties involved that it will not permit anyone to waste judicial resources by seeking enforcement of fraudulent 'arbitration awards.'" *See* **Exh. C** at 7, n. 1.

Applying the above factors, sanctions are appropriate. Plaintiff's misconduct was clearly willful, as Plaintiff plainly knew throughout these proceedings that PennyMac's conduct did not create a binding contract between the parties. Finally, the very nature of the misconduct – filing a groundless petition against a servicer of his mortgage loan in a Federal Court – makes it clear that Plaintiff acted with the intent to injure and punish and for the improper purpose of using the courts to exact financial sanctions against his lender. In short, the conduct was precisely the type of egregious abuse of the legal process that Rule 11 sanctions were designed to deter.

Appropriate sanctions should, therefore, include an award of the total amount of reasonable attorney's fees and expenses incurred by PennyMac in defending this case. This sanction will serve as an appropriate deterrent to future conduct by Plaintiff. Moreover, an award of reasonable attorney's fees to PennyMac is necessary to deter other similarly-situated individuals plying the SAA scam to defraud their mortgage lenders and the Court. *See* FED. R. CIV. P. 11(c). Moreover,

Plaintiff should be barred from pursuing any similar scheme in the future before this or any other Court.

IV. **CONCLUSION**

Plaintiff failed to ground his Petition in any cognizable facts or law. Plaintiff's ignorance of the facts and law was willful, deliberate, and objectively false. Based upon the foregoing, the Motion for Sanctions should be granted.

                              Respectfully Submitted,

                              **BLANK ROME LLP**

Dated: January 7, 2020                */s/ Adrien Pickard*
                              Adrien Pickard, Esq. (VSB # 65833)
                              1825 Eye Street, N.W.
                              Washington, DC 20006-5403
                              Tel: (202) 727-5845
                              Fax: (202) 572-1430
                              APickard@blankrome.com
                              *Counsel for Defendant PennyMac Loan Services, LLC*

## **CERTIFICATE OF SERVICE**

  I certify that on January 7, 2020, I sent a copy of the foregoing *Memorandum of Law in Support of PennyMac Loan Services LLC's Motion for Sanctions Under Fed. R. Civ. P. 11* by first class mail, postage prepaid, to the following:

    Mark C. Johnson
    451 May Lane
    Louisa, VA 23093
    *Pro Se Plaintiff*

                */s/ Adrien Pickard*
                Adrien Pickard, Esq. (VSB # 65833)
                1825 Eye Street, N.W.
                Washington, DC 20006-5403
                Tel: (202) 727-5845
                Fax: (202) 572-1430
                APickard@blankrome.com
                *Counsel for Defendant PennyMac Loan Services, LLC*