IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MARK C. JOHNSON,

        Plaintiff,

v.

PENNYMAC LOAN SERVICES, LLC, et al.,

        Defendants.

Case. No. 3:19-cv-00837-DJN

Judge David J. Novak

## DECLARATION OF JOHNNY MORTON

I, Johnny Morton, being of full age, hereby declare as follows:

1.      I am an Authorized Representative for the defendant in this action, PennyMac Loan Services, LLC ("PennyMac"). I make this declaration in support of PennyMac's Motion for Sanctions Under Federal Rule of Civil Procedure Rule 11 and PennyMac's Opposition to Petition to Confirm Arbitration Award. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      As part of my job responsibilities for PennyMac, I am familiar with the type of loan records maintained by PennyMac in connection with loans secured by mortgages. I have personal knowledge of the matters relating to the subject loan set forth herein based on a review of PennyMac's business records. I have personal knowledge of PennyMac's procedures for creating these records, including that they are made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business records, or from information transmitted by persons with personal knowledge, that they are maintained in the course of PennyMac's regularly conducted business activities, and that it is the regular practice of PennyMac to make such records.

3.    As evidenced by the Note dated June 12, 2015 (the "Note"), Alcova Mortgage, LLC ("Alcova") lent $272,000.00 (the "Loan") to Mark C. Johnson ("Plaintiff") in connection with a mortgage loan to Plaintiff regarding the property located at 451 May Lane, Louisa, Virginia, 23093 (the "Property"). A true and correct copy of the Note is attached hereto as **Exhibit 1**.

4.    As security for the Note, Plaintiff entered into a Deed of Trust on June 12, 2015, that was recorded on or about June 17, 2015 in the Recorder's Office of Louisa, Virginia at Document Number 2015.4967. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit 2**. The Note and the Deed of Trust encompass the "Loan Documents."

5.    As indicated in a July 1, 2015 letter from PennyMac to Plaintiff, a true and correct copy of which is attached hereto as **Exhibit 3**, PennyMac became the servicer of the Loan effective June 30, 3015. Prior to June 30, 2015, PennyMac had no dealings with Plaintiff in any manner.

6.    PennyMac services the Loan on behalf of PennyMac Corp.

7.    Aside from what is set forth in the Loan Documents, there is no other contractual relationship between Plaintiff and PennyMac, as servicer for PennyMac Corp.

8.    Beginning in 2018, and over the course of the following year, Plaintiff began sending to PennyMac a series of letters in which Plaintiff asserted that he had somehow satisfied his mortgage obligation to PennyMac, even though Plaintiff continued to owe hundreds of thousands of dollars to PennyMac.

9.    October 10, 2019, PennyMac received a document titled "Arbitration Hearing Notification" (the "Arbitration Notice") which purported to advise PennyMac that an arbitration between Plaintiff and multiple defendants, including PennyMac, was to occur on October 21,

2019. A true and accurate copy of the Arbitration Notice is attached hereto as **Exhibit 4** along with the USPS Tracking record for the mailing.

10.     Prior to this date, PennyMac was unaware that Plaintiff had initiated an arbitration proceeding, and was also unaware of the basis of Plaintiff's purported claims in the arbitration.

11.     PennyMac never agreed to arbitrate any disputes with Plaintiff.

12.     PennyMac also never agreed to arbitrate any disputes with Plaintiff before Sitcomm Arbitration Association.

13.     PennyMac has never participated in an arbitration with Plaintiff.

14.     PennyMac has never participated in an arbitration with Sitcomm Arbitration Association.

15.     Aside from what is set forth in the Loan Documents, there is no other agreement between Plaintiff and PennyMac.

16.     In particular, PennyMac never entered into "Contract No. 45671-77FGHJK-k23459671-445678904©" as alleged in paragraph 5 of the purported Arbitration Award of October 21, 2019 that claims to have been issued by Sitcomm Arbitration Association.

17.     Thus, there is no agreement between Plaintiff and PennyMac to arbitrate any disputes as alleged in the Arbitration Notice or as Plaintiff alleges in this action.

18.     Attached hereto as **Exhibit 5** if a document entitled "Conditional Acceptance for Value and Counter Offer/Claim for Proof of Claim and Tender of Payment Offering" which purports to have been mailed to PennyMac on July 5, 2019.

19.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 7, 2020                    By: _____

                                          Name: Johnny Morton

                                          Title: Authorized Representative

# EXHIBIT 1

LOAN #: ████1390
CASE #: 14-14-6-1204656
MIN: 1006639-0001219923-5

## NOTE

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

June 12, 2015
[Date]

Roanoke,
[City]

Virginia
[State]

451 May Lane, Louisa, VA 23093
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$272,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Alcova Mortgage, LLC, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.875 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **August 1, 2015.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 1, 2045,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **305 Market St. SE, Suite 204**
**Roanoke, VA 24011**

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$1,279.04.**

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

VIRGINIA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3247 1/01 MODIFIED
Ellie Mae, Inc.

Page 1 of 3

Initials: _____
V3200VAN   0508
V3200VAN
06/11/2015 01:44 PM PST

**LOAN #:** ████1390

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of **15**       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
. If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

VIRGINIA FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3247 1/01 MODIFIED
Ellie Mae, Inc.

Page 2 of 3

Initials: _____
V3200VAN   0508
V3200VAN
06/11/2015 01:44 PM PST

LOAN #: 1390

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by me together with this Note, the covenants of the allonge are incorporated into and amends and supplements the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Other [Specify]

## 12. V.A. REGULATIONS

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("V.A.") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)
MARK C JOHNSON

This is to certify that this is the Note described in and secured by a Deed of Trust dated June 12, 2015, on the Property located in Louisa County, Virginia.

My Commission Expires:  2/28/2018

_____
Notary Public

*[Notary seal: ROBERTA LYNN CANARD LOVETT, NOTARY PUBLIC, REG # 7021204, COMMISSION EXPIRES 2/28/2018, COMMONWEALTH OF VIRGINIA]*

Lender: Alcova Mortgage, LLC
NMLS ID: 40508
Loan Originator: Gregory Alan Dudley
NMLS ID: 225844

[Sign Original Only]

Initials: _____ 
V3200VAN   0508
V3200VAN
06/11/2015 01:44 PM PST

## ALLONGE TO NOTE

LOAN # ████1390

LOAN AMOUNT  **$272,000.00**

PROPERTY ADDRESS  **451 May Lane**
**Louisa, VA 23093**

ALLONGE TO NOTE DATED  **June 12, 2015**

IN FAVOR OF  **Alcova Mortgage, LLC, a Limited Liability Company**

AND EXECUTED BY  **Mark C Johnson**

PAY TO THE ORDER OF  **PennyMac Corp.**

WITHOUT RECOURSE  **Alcova Mortgage, LLC, a Limited Liability Company**

Jennifer Peters

BY  _Jennifer Peters_

TITLE  _Banking Officer_

Document #L444 LFF305
Ellie Mae, Inc.



GN13  0103
GN13
06/11/2015 01:44 PM PST

EXHIBIT 2

When recorded, return to:
Alcova Mortgage, LLC
Attn: Final Document Department
305 Market Street SE, Suite 204
Roanoke, VA 24011

This document was prepared by:
Alcova Mortgage, LLC
305 Market St SE Ste 204
Roanoke, VA 24011
540-904-0005

APN #:  12-18-8

LOAN #: ████1390

AMOUNT OF CONSIDERATION: $272,000.00

CASE #: 14-14-6-1204656

————— [Space Above This Line For Recording Data] —————

## DEED OF TRUST

| MIN  1006639-0001219923-5 |
| MERS PHONE #: 1-888-679-6377 |

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by    **MARK C JOHNSON, MARRIED MAN,**

as Borrower (trustor), to   **Fact Finders Title & Settlement, Inc.,**

as Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc., as beneficiary.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **June 12, 2015,**                together with all Riders to this document.
(B) "Borrower" is   **MARK C JOHNSON, MARRIED MAN.**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is   **Alcova Mortgage, LLC.**

VIRGINIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01
Ellie Mae, Inc.                                                Page 1 of 10

Initials: _NcJ_
VAEDEED  0315
VAEDEED
06/11/2015 01:44 PM PST



Lender is   a Limited Liability Company,  
Virginia.  
204, Roanoke, VA 24011.

**LOAN #:** ▮1390  
organized and existing under the laws of  
Lender's address is **305 Market St SE Ste**

(D) "Trustee" is   **Fact Finders Title & Settlement, Inc..**

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is **161 Spicers Mill Road, Orange, VA 22960.**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **June 12, 2015.** The Note states that Borrower owes Lender **TWO HUNDRED SEVENTY TWO THOUSAND AND NO/100 * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S.   $272,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **July 1, 2045.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."  
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.  
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider  
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]  
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider  
☒ V.A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.  
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.  
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.  
(M) "Escrow Items" means those items that are described in Section 3.  
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.  
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.  
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.  
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.  
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

VIRGINIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01  
Ellie Mae, Inc. Page 2 of 10

Initials: ▮▮  
VAEDEED   0315  
VAEDEED  
06/11/2015 01:44 PM PST



grants and conveys to Trustee, in trust, with power of sale, the following described property located in the [Type of Recording Jurisdiction] County

LOAN #: ████4390

of **Louisa**                                                                                                      [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: 12-18-8

which currently has the address of    **451 May Lane, Louisa,**

                                                                                                                                        [Street] [City/County]
**Virginia   23093**             ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.

VIRGINIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01
Ellie Mae, Inc.                                        Page 3 of 10

Initials: _Me__
VAEDEED  0315
VAEDEED
08/11/2015 01:44 PM PST



LOAN #: ▪▪▪▪▪390

If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01
Ellie Mae, Inc.                                             Page 4 of 10



Initials: _____
VAEDEED  0315
VAEDEED
06/11/2015 01:44 PM PST

LOAN #: ████390

providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials: _____
VAEDEED   0315
VAEDEED
08/11/2015 01:44 PM PST



LOAN #: ████1390

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01
Ellie Mae, Inc.                                                Page 6 of 10

Initials: 
VAEDEED   0315
VAEDEED
06/11/2015 01:44 PM PST

LOAN #: ██████1390

such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making

VIRGINIA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3047 1/01
Ellie Mae, Inc.                                              Page 7 of 10

Initials: _____
VAEDEED  0315
VAEDEED
06/11/2015 01:44 PM PST



a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument

VIRGINIA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT Form 3047 1/01**
Ellie Mae, Inc. Page 8 of 10

Initials: _____
VAEDEED  0315
VAEDEED
08/11/2015 01:44 PM PST



**LOAN #:** [redacted]1390

or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01
Ellie Mae, Inc.                                        Page 9 of 10

Initials: 
VAEDEED   0315
VAEDEED
06/11/2015 01:44 PM PST

LOAN #:⬛1390

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   06/12/15 (Seal)
MARK C JOHNSON                                             DATE

STATE OF Virginia
COUNTY ss: Orange

The foregoing instrument was acknowledged before me this JUNE 12, 2015 (date) by MARK C JOHNSON (name of person acknowledged).

Notary Public _____

My commission expires: _____

ROBERT LYNN CANARD
NOTARY PUBLIC
REG # 7021204
COMMISSION EXPIRES
2/28/2018
COMMONWEALTH OF VIRGINIA

Lender: Alcova Mortgage, LLC
NMLS ID: 40508
Loan Originator: Gregory Alan Dudley
NMLS ID: 225844

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3047 1/01
Ellie Mae, Inc.                                       Page 10 of 10

Initials: _____
VAEDEED   0315
VAEDEED
06/11/2015 01:44 PM PST



EXHIBIT "A"
LEGAL DESCRIPTION

. All that certain lot, piece, or parcel of land, lying, being, and situate in Green Springs Magisterial District, Louisa County, Virginia, designated as LOT 8, HICKORY CREEK ACRES, containing 21.57 acres, more or less, as shown on that certain plat of survey by William W. Dickerson, Jr., Land Surveyor, dated May 3, 2002, revised October 18, 2002 and January 7, 2003, recorded in the Clerk's Office of the Circuit Court of Louisa County, Virginia, in Plat Book 8, Pages 1641 - 1646.

AND BEING the same property conveyed to Mark C. Johnson by Deed dated April 18, 2005 and recorded in Deed Book 915 at Page 789 in the Clerk's Office of the Circuit Court of Louisa County, Virginia.

TAX ID# 12-18-8

**Purported Address:**
451 May Lane, Louisa, VA 23093

**Issued through the office of:**
Fact Finders Title & Settlement Inc.
161 Spicers Mill Road
Orange, VA 22960

Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.
File No. 201503495
VA STG ALTA Commitment Sch A

Page 2 of 2    STEWART TITLE
GUARANTY COMPANY

# EXHIBIT 3

 **PennyMac**

P.O. Box 514387
Los Angeles, CA 90051-4387

| **Notification of Assignment, Sale or Transfer of Your Mortgage Loan** |

Date: July 01, 2015

7.1.272 1 MB 0.436   03384S11.csv 0701 000001 000001 001/002

MARK JOHNSON
451 MAY LN
LOUISA VA 23093

|||||ı|||||ıııı|ı||||ıı||||ııı|ı||ıı|ı|||||ı|ıı||ıı|||ı|ı|||||ıııı|ı|

Re:     Loan Number: ███████3145
451 MAY LN LOUISA, VA 23093

Dear Mark Johnson:

The purpose of this notice is to inform you that your mortgage loan referenced above was sold to PENNYMAC CORP. ("Creditor") on June 30 2015.  Your servicer will be PennyMac Loan Services, LLC ("PennyMac").This letter will provide you with information on how to contact PennyMac who has to act on behalf of the Creditor.  Please note, this letter does not require any action to be taken on your part but is simply a courtesy notification of the assignment, sale or transfer of your mortgage loan. **Below is PennyMac's contact information should you have any questions or concerns about your loan.**

The transfer of mortgage loans is a standard part of the mortgage business for many of the nation's mortgage lenders.  The transfer of your mortgage loan to the Creditor does not affect any terms or conditions of the Mortgage/Deed of Trust or Note.  The transfer of ownership of your mortgage loan has not been publicly recorded.

It is important that you send your monthly loan payments directly to PennyMac at the address below and on your monthly statement.  All correspondence and inquiries concerning your loan also should be addressed to PennyMac.

**Contact PennyMac with any questions you have regarding this notice:**
**New Servicer: PennyMac Loan Services, 6101 Condor Drive Moorpark CA 93021**
**Address for sending payments: P.O. Box 30597 Los Angeles CA 90030**
**Toll-free telephone number for inquiries: (800) 777-4001**
**Website: www.PennyMacUSA.com**

**Creditor Information:** PENNYMAC CORP. at 6101 CONDOR DRIVE, SUITE 300 MOORPARK CA 93021, (818) 224-7442



We are required by law to inform you that this communication is from a debt collector and any information obtained will be used for that purpose.  However, if your mortgage loan is subject to pending bankruptcy or you have received a discharge in bankruptcy, this letter is for informational purposes and is not an attempt to collect a debt against you personally.

404Notice  112014



## Important Legal Notices

We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.

**CALIFORNIA** residents: As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**COLORADO** residents:  A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer.  A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coloradoattorneygeneral.gov/ca.  Our local office is located at 700 17th St, Suite 200, Denver, CO 80202, (866) 436-4766.

**MAINE** residents:  PennyMac Loan Services, LLC operating hours are 6:00 A.M. until 6:00 P.M. Pacific Time Monday through Friday and 7:00 A.M. until 11:00 A.M. Pacific Time Saturday.  You may contact our office during business hours by calling (866) 545-9070.

**MASSACHUSETTS** residents: NOTICE OF IMPORTANT RIGHTS: You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the creditor.

**MINNESOTA** residents: This collection agency is licensed by the Minnesota Department of Commerce.

**MONTANA** residents:  The State of Montana, Department of Administration, Division of Banking and Financial Institutions (Division), is the licensing agency of mortgage servicers.  Any consumer with a comment, question, or concern should contact the Division by the means listed within this disclosure.  State of Montana, Department of Administration, Division of Banking and Financial Institutions, 301 South Park, Suite 316, PO Box 200546, Helena, MT 59620-0546.  Phone: 406-841-2920.  Fax: 406-841-2930.  E-mail: banking@mt.gov. Website: www.banking.mt.gov/mortgage.asp.

**NEW YORK** residents:  This collection agency is licensed by the New York City Department of Consumer Affairs, License Numbers 1294096 and 1467388.  This collection agency is licensed by the City of Buffalo, License Number 551910.

**NORTH CAROLINA** residents: Licensed by the North Carolina Office of the Commissioner of Banks.  Complaints regarding the servicing of your mortgage may be submitted to the North Carolina Office of the Commissioner of Banks, 316 W. Edenton Street, Raleigh, NC 27603, (919) 733-3016.

**TENNESSEE** residents: This collection agency is licensed by the Collection Service Board, State Department of Commerce and Insurance.

**TEXAS** residents:  COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 N. LAMAR, SUITE 201, AUSTIN, TX 78705.  A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT (877) 276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**UTAH** residents: As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:(i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. AS REQUIRED BY NEW YORK STATE LAW, if a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income, (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds;11) and Ninety percent of your wages or salary earned in the last sixty days.

***This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally.***

## Licensing Information

Equal Housing Opportunity © 2008-2015 PennyMac Loan Services, LLC, 6101 Condor Drive, Suite 200, Moorpark, CA 93021, 818-224-7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org).  Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Licensed by the Department of Business Oversight under the California Residential Mortgage Lending Act. Colorado: Regulated by the Division of Real Estate. Colorado office: 700 17th St, Suite 200, Denver, CO 80202, (866) 436-4766. Georgia Residential Mortgage Licensee #33027. Illinois Residential Mortgage Licensee # MB.6760595. Massachusetts Mortgage Lender License # ML35953. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Licensed by the Mississippi Department of Banking and Consumer Finance. Licensed by the New Hampshire Banking Department. Licensed by the N.J. Department of Banking and Insurance. North Carolina Permit No. 104753. Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850062.000. Rhode Island Lender License # 20092600LL. Washington Consumer Loan License # CL-35953. For a complete listing of state licenses and important notices, please visit www.pennymacusa.com/state-licenses. Loans not available in New York. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (06-2015)



# EXHIBIT 4

*Imaging*

*Pkg delivered
w/ CD -
CD given to
Dinorah Vasquez
(Legal)
rec'd on 10/14/19*

SITCOMM ARBITRATION ASSOCIATION
P.O. Box 41964
Charleston, South Carolina 29423
1 (877) 631-1722

Website: saalimited.com

Email: support@saalimited.com

Page | 1

**IN THE MATTER OF THE ARBITRATION**

**BETWEEN THE FOLLOWING PARTIES:**

MARK CHRISTOPHER JOHNSON, ET AL.,        Contract No.: 456UY671-
                                                                     77ERT456789UYHGFD-DFGHJUYTRF5678 –
                                                                     QWE345678©

                    CLAIMANT,        9 U.S. CODE § 1, 2, 9; THE COMMON LAW

        vs.                          **ARBITRATION HEARING NOTIFICATION**

PENNY MAC LOAN SERVICES LLC., ET AL.,
US. DEPARTMENT OF JUSTICE, ET AL.,
UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,
THE UNITED STATES SUPREME COURT, ET AL.,

                    RESPONDENT(S).

**NOTICE OF ARBITRATION HEARING**

**TO THE ABOVE-NAMED PARTIES OF RECORD:**  You are hereby notified that the
above-entitled matter has been set for hearing as follows:

**DATE: October 21, 2019**

**TIME:        12:00 P.M. EASTERN STANDARD TIME**

**IMPORTANT NOTICE:**  In the event that the Party(s) do not answer this Notice or request an
extension within the time indicted, the Arbitrator may proceed to enter an Arbitration Award
based upon the supporting evidence presented and other related documentation.

        Enclosed with this Notice is electronic media for the Respondent(s), that contains the
supporting documentation of the above-entitled matter for your review.  YOU HAVE TEN (10)
DAYS from receipt of this Notice to forward a Response to the Arbitrator.  If a Response is not
received, the Arbitrator will presume your acceptance and may proceed to review the supporting
documentation electronically and issue a binding decision, please note that any and all responses
must be served upon the parties, and you must maintain a record of proof of service.

DATE:  October 7, 2019                    /s/ Kirk Gibbs

SITCOMM ARBITRATION ASSOCIATION                    ARBITRATION HEARING NOTIFICATION

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**FROM:**

SAA LIMITED
PO BOX 41694
CHARLESTON, SC 29423

**TO:**

Penny Mac Loan Servic
P.O. Box 660929
Dallo, TX 75266-0



scan the QR code.

# UNITED STATES POSTAL SERVICE®

# PRIORITY® MAIL

or



UNITED STATES
POSTAL SERVICE®

**USPS TRACKING #**

9114 9014 9645 0433 9905 66

LAB400R Aug. 2013
7690-17-000-0699

EP14F Oct 2018

USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 9114901496450433990566

Remove ✕

Your item was delivered at 5:04 pm on October 10, 2019 in DALLAS, TX 75260.

## ⊘ Delivered

October 10, 2019 at 5:04 pm
Delivered
DALLAS, TX 75260



---

### Tracking History ⌃

**October 10, 2019, 5:04 pm**
Delivered
DALLAS, TX 75260
Your item was delivered at 5:04 pm on October 10, 2019 in DALLAS, TX 75260.

---

**October 10, 2019, 4:03 pm**
Available for Pickup
DALLAS, TX 75260

---

**October 10, 2019, 3:13 pm**
Arrived at Post Office
DALLAS, TX 75260

---

**October 10, 2019, 4:35 am**
Departed USPS Regional Facility

DALLAS TX DISTRIBUTION CENTER

---

**October 10, 2019, 2:30 am**
Arrived at USPS Regional Destination Facility
DALLAS TX DISTRIBUTION CENTER

---

**October 9, 2019**
In Transit to Next Facility

---

**October 8, 2019, 11:07 pm**
Departed USPS Regional Origin Facility
GULFPORT MS DISTRIBUTION CENTER

---

**October 8, 2019, 10:24 pm**
Arrived at USPS Regional Origin Facility
GULFPORT MS DISTRIBUTION CENTER

---

**October 8, 2019, 5:02 pm**
Departed Post Office
LAUREL, MS 39440

---

**October 8, 2019, 3:59 pm**
USPS in possession of item
LAUREL, MS 39440

---

Feedback

---

**Product Information** ⌄

---

**See Less** ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

Case 3:19-cv-00837-DJN    Document 11-1    Filed 01/20/20    Page 30 of 42 PageID# 168

**FAQs**

Feedback

# EXHIBIT 5

To: PennyMac Loan Services, LLC

Address: P.O. Box 660929 Dallas, Texas. 75266-0929

Alcova Mortgage Co. Original Lender.

**From: Mark C. Johnson 451 May Lane, Louisa, VA 23093**

**June 26, 2019**

### CONDITIONAL ACCEPTANCE FOR VALUE AND COUNTER OFFER/CLAIM FOR PROOF OF CLAIM and TENDER OF PAYMENT OFFERING:

Please understand that according to the terms of our agreement (the agreement with the original lender Alcova Mortgage Company ), and you're presenting us with your PennyMac new terms, we conditionally accept your offer under the following terms and conditions. You are to provide a complete accounting, signed under penalty of perjury attesting to the amount of expenditures and cost so that I may redeem my property. You must also provide proof of claim of the following:

a. That we are not currently under a national emergency whereby all banking business have been suspended similar to that indicated by presidential proclamation 2039?

b. That as a result of the current emergency, book entry credit is not an acceptable form of business transaction within the borders of the United States?

c. That you have not charged off this account and or that the account itself has never been charged off whereby an internal credit has been applied, bringing the account balance to zero, and then the creation of a new account where the previous unapplied credit remained outstanding (in other words that there is an outstanding balance after the internal credit application)?

d. That your attempt to seize and/or take my property is not a violation of my right to due process, right to property? And that:

The Fifth Amendment does not command that property be not taken without making just compensation? That Valid contracts are not property, whether the obligor be a private individual, a municipality, a State or the United States?

e. That the Rights against the United States and or any other party arising out of a contract with it are protected by the Fifth Amendment? United States v. Central P. R. Co., 118 US 235, 238; United States v. Northern P. R. Co., 256 US 51, 64.

f. That when the United States and or any other party enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals?

g. That in Perry v. United States, 294 US 330, 352-353 (1935) it was held that:-

When the United States, with constitutional authority, makes contracts, it has rights and incurs responsibilities similar to those of individuals who are parties to such instruments. There is no difference, said the Court in United States v. Bank of Metropolis, 15 Pet. 977, 392, except that the United States cannot be sued without its consent. See, also, The Floyd Acceptances (Pierce v. United States) 7 Wall. 666, 675; Cooke v. United States, 91 US 389, 396. In Lynch v. United States, 292 US 571, 580, with respect to an attempted abrogation by the Act of March 20, 1933 (48 Stat. at L. 8, 11, chap. 3, U.S.C. title 38, section 701) contracts of the United States, the Court quoted with approval the statement in the Sinking Fund Cases, 99 US 70, supra, and said: "Punctilious fulfillment of contractual obligations is essential to the maintenance of the credit of public as well as private debtors. No doubt there was in March, 1933, great need of economy. (This is in direct reference to the March 9, 1933 act and presidential proclamation 2039, where a NATIONAL ECONOMIC BANKING EMERGENCY was declared, facilitating the serious emergency that Congress has stated is still extant)?

h. In the administration of all government business economy had become urgent because of lessened revenues and the heavy obligations to be issued in the hope of relieving widespread distress. Congress was without power to reduce expenditures by abrogating contractual obligations of the United States. To abrogate contracts, in the attempt to lessen government expenditure, would be not the practice of economy, but an act of repudiation." And that any attempt on your part to invalidate this contract would amount to the same repudiation?

i. That the United States treasury, as authorized under the presidential proclamation 2039, has not declared legal tender to be valueless? Backed by nothing? [- 🔲 An official website of the United States Government-

Legal Tender Status - Treasury Department --- U.S. DEPARTMENT OF THE TREASURY

1 | Page

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (*Henry Schein*), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

https://www.treasury.gov/resource-center/faqs/Currency/Pages/legal-tender.aspx

Jan 4, 2011 - The pertinent portion of law that applies is the Coinage Act of 1965, specifically Section 31 U.S.C. 5103, entitled "Legal tender," which states: "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender ... Federal Reserve notes are not redeemable in any commodity, and receive no backing by anything This has been the case since 1933. The notes have no value for themselves."]

    j.    That The Federal Emergency Relief Act of 1933 AN ACT, was not to provide for cooperation by the Federal Government with the several States and Territories and the District of Columbia in relieving the hardship and suffering caused by (Sec. 4. (a)) Out of the funds ... to provide the necessities of life to persons in need as a result of the present emergency, and/or to their dependents, whether resident, transient, or homeless. - The Federal Emergency Relief Act of 1933 Approved, May 12, 1933 (Sec. 4. (a))?

**k.**    *That "The ownership of all property is not in the state"?*

**l.**    *That "Under the new law government obligations, is not backed by the credit of the nation. It does not represent a mortgage on all the homes, and other property of all the people of the nation."? Senate Document No. 43, 73rd Congress, 1st Session, Congressional Record, March 9, 1933 on HR 1491 p. 83.*

**m.**    That Obligations of the United States shall not be receivable for all public dues? That they shall not be redeemed at the Treasury Department of the United States or at any Federal Reserve bank? 12 U.S. Code § 411 - Issuance to reserve banks; nature of obligation; redemption (Dec. 23, 1913, ch. 6, § 16 (par.), 38 Stat. 265; Jan. 30, 1934, ch. 6, § 2(b)(1), 48 Stat. 337; Aug. 23, 1935, ch. 614, title II, § 203(a), 49 Stat. 704.)

You are hereby notified that I do hereby tender payment for the referenced obligation of debt, and because this debt concerns property of the United States it is deemed by law and operation of statute to be a "government obligations" and must be handled in accord with the dictates of statute. I accept the obligation on and in behalf of the United States of America and hereby make assignment of the obligation[s] to the United States Treasury Department creating a special relationship on and in behalf of the United States of America as authorized by statute and trust law. You are to present the item (remittance coupon) to the United States Treasury Department or at any Federal Reserve bank to include any Federal Reserve member banks to redeem the value of the obligation. 12 USC 411, directing an immediate credit for value to my account.

As per the terms of this contract this shall serve as my notice of change in terms of contract, cancelling and or suspending any acceleration and or associated penalties in paying the US 'government [debt Instrument] obligations' for value through acceptance, pledging an assignment in full. And shall act as my redemption under statute and in equity.

Re: 8003663145

FGTN: COU-145590633898764-74936071959ASEP-81977

---

Mark C. Johnson a nontaxpayer as defined by statute              COU-145590633898764-74936071959ASEP-81977

451 May Lane                                       6-26-19
Louisa VA 23093

**EQUITABLE REMITTANCE COUPON**

"Pay and Pledged

To the Order of: Penny Mac **WITHOUT RECOURSE"**

Amount of

Obligation: **THREE HUNDRED THOUSAND DOLLARS IN CERTIFIED** CREDIT BY A NONTAXPAYER AT PAR

INTENTIONS: The above United States government obligations is hereby accepted and acknowledged and I do assign and pledge the total value of the obligation to the United States of America through the United States Department of the Treasury to be redeemed for value and receivable at the Federal Reserve, the Federal Reserve Bank, and/or any member bank and/or National Association as prescribed by statute (the act of March 9, 1933; the act of May 12, 1933; 12 USC 411; 18 USC 8; UCC 1-308; 3-419 and the intentions of the United States Congress concerning THE CURRENT SERIOUS NATIONAL EMERGENCY), and credited to grantors account.

Memo: Discharging of Government Obligations #8003663145                      Johnson, Mark C.
                                                Settlor and Interest Holder and Citizen of the United States of America

---

2 | Page

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (**Henry Schein**), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

So the remedy provided by government for discharging government obligations is 12 USC 411, and I elect to use such a remedy.

I.    CAVEAT

1.   Please understand that while the Undersigned wants, wishes and desires to resolve this matter as promptly as possible, the Undersigned can only do so upon Respondent('s) 'official response' to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim by Respondent('s) providing the Undersigned with the requested and necessary Proof of Claims raised herein above.

23131.    Therefore, as the Undersigned is not a signatory; NOR a party, to your "social compact" (contract) known as the Constitution (Charter) of the UNITED STATES; NOR noticed NOR cognizant, of any agreement/contract between the UNITED STATES, and the Undersigned and specifically any obtained through FULL DISCLOSURE and containing any FAIR/VALUABLE CONSIDERATION therein, to include the setting up of trust accounts, and or insurance policies, and or contracts, which would act/operate to create and establish a "relationship" (nexus) and thereby; and therein, bind the Undersigned to the specific "source of authority" for the creation and existence of the alleged statute(s)/law(s) as contained and allegedly promulgated within the "Code" known as the United States Code; which, with the privity of contract or contract itself would thereby; and therein, create and establish legal force and or effect of said statute(s)/law(s) over and upon the Undersigned; and, would also act/operate to subject the Undersigned to the "statutory jurisdiction" of the UNITED STATES, its laws, venue, jurisdiction, and the like of its commercial courts/administrative tribunals/units and thereby; and therein, bind the Undersigned to said courts/administrative tribunal's/unit's decisions, orders, judgments, and the like; and specifically as within the above referenced alleged Commercial/Civil/Cause; and, which would act/operate to establish and confer upon said court/administrative tribunal/unit the necessary requirement/essential of "subject-matter jurisdiction" without which it is powerless to move in any action other than to dismiss. It is to be noted that the use of any statute and/or code and or regulation and/or law other than those expressed by the Constitution, or for reference purposes only and not an acknowledgment and or proof of such engagement with knowing intent, and as a result thereof the parties agree that any statute and/or code introduced by the United States Congress and or state legislature under its non-governmental capacity i.e. it's "corporate business commercial transacting capacity", are not binding on any of the parties, and cannot be introduced and or used as any justification for any proceeding, and/or procedure, and or remedy respecting this matter. That the arbitration process is binding on all parties and is the sole and exclusive remedy for redressing any and all issue associated with this trust agreement. That this agreement supersedes and predates as well as replaces any and all prior agreements between the parties, and is binding on all parties and irrevocable, and the parties agreed to the terms and conditions of this agreement upon default of the defaulting party as of the date of the default, that the value of this agreement is (Seven Hundred and Fifty Thousand Dollars), the amount demanded is ($750,000.00). The Undersigned humbly and respectfully requests the Respondent(s) provide said necessary Proof of Claims so as to resolve the Undersigned's confusion and concerns within this/these matter(s), otherwise, the Undersigned must ask, "What is the Undersigned's remedy?"

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc. (Henry Schein)*, the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

23132.   **THEREFORE**, as Respondent(s) have superior knowledge of the law, and as custodian of record has access to the requested and necessary Proof of Claims, and otherwise being in a 'catbird's seat' to provide the requested and necessary Proof of Claims raised herein above, Respondent(s) is able, capable, and most qualified to inform the Undersigned on those matters relating to and bearing upon the above referenced alleged *CIVIL/COMMERCIAL/Cause* and thereby; that there is a duty on the part of the parties to communicate and/or respond to the aforementioned proof of claim and/or demand associated with this self-executing binding irrevocable contractual agreement coupled with interests and therein, has an obligation to clear-up all confusion and concerns in said matter(s) for the Undersigned as to the nature and cause of said process(s), proceeding(s), and the like as well as the lawfulness and validity of such to include; inter ali, all decisions, orders, and the like within; and arising from, all such within said Commercial/Civil/Cause.

23133.   The Undersigned herein; and hereby, provides the Respondent(s) ten (10) Calendar days; to commence the day after receipt of this **CONDITIONAL ACCEPTANCE FOR VALUE BINDING SELF-EXECUTING CONTRACTUAL AGREEMENT COUPLED WITH INTERESTS AND COUNTER OFFER/CLAIM FOR PROOF OF CLAIM, in** which to gather and provide the Undersigned with the requested and necessary Proof of Claims raised herein above, with the instruction, to transmit said Proof of Claims to the Undersigned and/or the below named Notary/Third Party and or their representative as stipulated and attached hereto by reference, for the sole purpose of certifying RESPONSE or want thereof from Respondent(s). Furthermore, the Undersigned herein; and hereby, extends to the Respondent(s) the offer for an additional ten (10) Calendar days in which to provide the requested and necessary Proof of Claims raised herein above. If Respondent(s) desires the additional ten (10) Calendar days, Respondent must cause to be transmitted to the Undersigned and the below named Notary/Third Party etc. al; a signed written REQUEST. Upon receipt thereof, the extension is automatic; however, the Undersigned strongly recommends the Respondent(s) make request for the additional ten (10) Calendar days well before the initial ten (10) Calendar days have elapse and to allow for mailing and delivery time. NOTICE: Should Respondent(s) make request for the additional ten (10) Calendar days, said request will be deemed "good faith" on the part of Respondent(s) to perform to this offer and provide the requested and necessary Proof of Claims. Should Respondent(s) upon making request for the additional ten (10) Calendar days, of which there will not be, cannot be, and shall not be any extension as the aforementioned requested information is required to be readily available for inspection and review upon demand, then fail or otherwise refuse to provide the requested and necessary Proof of Claims, and/or fails to provide the specific information in full detail as specified according to the terms of this agreement, and or shall cause to have presented a nonresponse, and or a general response, and or a nonspecific response, which shall only constitute as an attempt to evade, to avoid, to delay, said act(s) on the part of Respondent(s) shall be deemed and evidenced as an attempted constructive fraud, deception, bad faith, and the like upon Respondent's (s') part and further attempts to cause an inflict injury upon the Undersigned. Further, the Undersigned herein strongly recommends to Respondent(s) that any Proof of Claims and request for the additional ten (10) Calendar days be transmitted "Certified" Mail, Return Receipt Requested, and the contents therein under Proof of Mailing for the good of all concerned.

23134.   Should the Respondent(s) fail or otherwise refuse to provide the requested and necessary Proof of Claims raised herein above within the expressed period of time established and set herein above, Respondent(s) agree that they will have failed to State any claim upon which relief can be granted. Further, Respondent(s) will have agreed and consented through "tacit acquiescence" to ALL the facts in relation to the above referenced alleged

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (*Henry Schein*), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

Commercial/Civil/Cause, as raised herein above as Proof of Claims herein; and ALL facts necessarily and of consequence arising there from, are true as they operate in favor of the Undersigned, and that said facts shall stand as prima facie and ultimate (un-refutable) between the parties to this Conditional Acceptance binding contractual agreement coupled with interests for Value and counter offer/claim for Proof of Claim, the corporate Government juridical construct(s) Respondent(s) represents/serves, and ALL officers, agents, employees, assigns, and the like in service to Respondent(s), as being undisputed. Further, failure and/or refusal by Respondent(s) to provide the requested and necessary Proof of Claims raised herein above shall act/operate as ratification by Respondent(s) that ALL facts as set, established, and agreed upon between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, are true, correct, complete, and NOT misleading. The parties further agree that any contracting in the future between the parties shall not invalidate and/or supersede this contract, and if any portion of this contract shall be deemed or held to be invalid, it shall not invalidate any other portion and/or section of this contract. That this contract shall be taken contextually, and read, construed, and reviewed under the strict guise of the reasonable common man or woman position, without respect legalese and/or legal terminology. That the common law referred to herein and throughout, is not the English common law, but the common law ascribed within the meaning of "due to your fellow as you would have him do to you", and the equitable principle "make peace (settle matters quickly) with your adversary while he is on his way to the magistrate, do it while you are still together on the way, or your adversary may hand you over to the judge, and the judge may hand you over to the officer, and you may be thrown into prison. Truly I tell you, you will not get out until you have paid the last penny." This shall and is construed as an attempt to settle matters quickly, so that we may be at peace, it is our hope to maintain the peace within the community, and with our neighbors. This contract shall remain in force until all terms and conditions have been met and fulfilled to their completion, and at such time the special relationship, trustee, grantor, beneficiary, properties, assets, value, and consideration shall cease their obligation beyond the terms and conditions stated herein.

### I.    ARBITRATION- AN ADMINISTRATIVE REMEDY COGNIZABLE AT COMMON-LAW

23135.    **ADDITIONALLY** it is exigent and of consequence for the Undersigned to inform Respondent(s), in accordance with and pursuant to the principles and doctrines of "clean hands" and "good faith," that by Respondents(s) failure and or refusal to respond and provide the requested and necessary Proof of Claims raised herein above and thereby; and it shall be held and noted and agreed to by all parties, that a general response, a nonspecific response, or a failure to respond with specificities and facts and conclusions of common law, and or to provide the requested information and documentation that is necessary and in support of the agreement shall constitute a failure and a deliberate and intentional refusal to respond and as a result thereby and or therein, expressing the defaulting party's consent and agreement to said facts and as a result of the self-executing agreement coupled with interests, conferring upon the undersigned/grantor full general power of attorney coupled with interests, and that the following is contingent upon their failure to respond in good faith, with specificity, with facts and conclusions of common-law to each and every averment/proof of claim, condition, and/or other/additional claims raised; as they operate in favor of the Undersigned, through "tacit acquiescence," Respondent(s) NOT ONLY expressly affirm the truth and validity of said facts set, established, and agreed upon between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, but Respondent(s); having agreed and consented to Respondent(s) having a duty and obligation to provide the requested and necessary Proof of Claims raised herein above, will create and establish for Respondent(s) an

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc. (Henry Schein)*, the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

estoppel in this matter(s), and ALL matters relating hereto; and arising necessarily therefrom, and/or thereto, and or therein;

and,

23136.    In accordance with and pursuant to this agreement; a contractually (consensual) irrevocable binding agreement coupled with interests between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim to include the corporate Government Agency/Department construct(s) whom Respondent(s) represents/serves; as well as, ALL officers, agents, employees, assigns, and the like in service to Respondent(s) agree and affirm under penalty of contempt that they will not argue, controvert, oppose, or otherwise protest ANY of the facts already agreed upon by the parties set and established herein; and necessarily and of consequence arising therefrom, in ANY future remedial proceeding(s)/action(s), including binding arbitration and confirmation of the award in the District Court of the United States at any competent court under original jurisdiction, in accordance with the general principles of non-statutory Arbitration, wherein this Conditional Acceptance Irrevocable Binding Self-Executing Contractual Agreement for the Value/Agreement/Contract no. COU-145590633898764-74936071959ASEP-81977 ® constitutes an agreement of all interested parties in the event of a default and acceptance through silence/failure to respond when a request for summary disposition of any claims or particular issue may be requested and decided by the arbitrator, and the parties agree that the policies and procedures of SAA (THE SITCOMM ARBITRATION ASSOCIATION) whereas a designated arbitrator shall be chosen at random, who is duly authorized, and in the event of any physical or mental incapacity to act as arbitrator, the Undersigned shall retain the authority to select any neutral(s)/arbitrator(s) that qualify pursuant to the common law right to arbitration, as the arbitration process is a private remedy decided upon between the parties, and with respects this agreement, the defaulting party waives any and all rights, services, notices, and consents to the undersigned and or the undersigned's representative selection of the arbitrator thereby constituting agreement, and any controversy or claim arising out of or relating in any way to this Agreement or with regard to its formation, interpretation or breach, and any issues of substantive or procedural arbitrability shall be settled by arbitration, and the arbitrator may hear and decide the controversy upon evidence produced, and not based on personal opinion, legalese, legal terminology, legal technicalities, statutes, codes, ordinances, regulations, but within the scope of this herein agreement according to its terms and conditions, and must do so even if and or although a party who was duly notified of the arbitration proceeding did not appear; that the Undersigned deems necessary to enforce the "good faith" of ALL parties hereto within without respect to venue, jurisdiction, law, and forum the Undersigned deems appropriate.

23137.    Further, Respondent(s) agrees the Undersigned can secure damages via financial lien on assets, properties held by them or on their behalf for ALL injuries sustained and inflicted upon the Undersigned for the moral wrongs committed against the Undersigned as set, established, agreed and consented to herein by the parties hereto; and authorizes the undersigned to attach, leech, affix such a lien/claim on the aforementioned properties/assets without objection, and this is to include but not limited to: constitutional impermissible misapplication of statute(s)/law(s) in the above referenced alleged Commercial/Civil/Cause; fraud, conspiracy (two or more involved); trespass of title, property, and the like; and, ALL other known and unknown trespasses and moral wrongs committed through ultra vires act(s) of ALL involved herein; whether by commission or omission. Final

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (*Henry Schein*), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter--even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

amount of damages to be calculated prior to submission of Tort Claim and/or the filing of lien and the perfection of a security interest via a Uniform Commercial Code financing 1 Statement; estimated in excess of TEN (10) Million dollars (USD- or other lawful money or currency generally accepted with or by the financial markets in America), and notice to Respondent('s) by invoice. The respondents are further notified that as per the United States Supreme Court, contracts are property, and as such Per Respondent('s) failure and or refusal to provide the requested and necessary Proof of Claims and thereby; and therein consenting and agreeing to ALL the facts set, established, and agreed upon between the parties hereto, shall constitute a self-executing binding irrevocable durable general power of attorney coupled with interests; of this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, conferring all rights, equitable and/or otherwise upon the undersigned/grantor, and such becomes the security agreement under commercial law whereby only the nondefaulting party becomes the secured party, the holder in due course, the creditor in and at commerce. It is deemed and shall always and forever be held that the undersigned and any and all property, interest, assets, estates, trusts commercial or otherwise shall be deemed consumer and household goods not-for-profit and or gain, private property, and exempt, not for commercial use, nontaxable as defined by the Uniform Commercial Code article 9 section 102 and article 9 section 109 and shall not in any point and/or manner, past, present and/or future be construed otherwise-see the Uniform Commercial Code article 3, 8, and 9; that the properties associated with this agreement shall never be deemed and/or construed as income, profit but for redemption and bringing about equitable wholeness and wellness.

23138.     Should Respondent(s) allow the ten (10) Calendar days or twenty (20) Calendar days total if request was made by signed written application for the additional ten (10) Calendar days to elapse without providing the requested and necessary Proof of Claims, Respondent(s) will go into fault and the Undersigned will cause to be transmitted a Notice of Fault and Opportunity to Cure and Contest Acceptance to the Respondent(s); wherein, Respondent(s) will be given an additional three (3) days (72 hours) to cure Respondent's (s') fault. Should Respondent(s) fail or otherwise refuse to cure Respondent's(s') fault, Respondent will be found in default and thereby; and therein, Respondent will have established Respondent's(s') consent and agreement to the facts contained within this Conditional Acceptance for Value and counter offer/claim for Proof of Claim as said facts operate in favor of the Undersigned; e.g., that the judgment of alleged "court of record" within the above referenced alleged *Commercial/Civil/Cause* is VOID AB INITIO for want of subject-matter jurisdiction of said venue; insufficient document (Information) and affidavits in support thereof for want of establishing a claim of debt; want of Relationship with the "source of authority" for said statute(s)/law(s) for want of privity of contract, or contract itself; improperly identified parties to said judgment, as well as said dispute/matter; and, Respondent(s) agrees and consents that Respondent(s) does have a duty and obligation to Undersigned; as well as the corporate Government Department/agency construct(s) Respondent(s) represents/serves, to correct the record in the above referenced alleged *Commercial/Civil/Cause* and thereby; and therein, release the indenture (however termed/styled) upon the Undersigned and cause the Undersigned to be restored to liberty, and releasing the Undersigned's property rights, as well as ALL property held under a storage contract in the "name" of the all-capital-letter "named" defendant within the above referenced alleged *Commercial/Civil/Cause* within the alleged commercially "bonded" warehousing agency d.b.a., for the commercial corporate Government construct d.b.a. the United States. That this presentment is to be construed contextually and not otherwise, and that if any portion and/or provision contained within this presentment, this self-executing binding irrevocable contractual agreement coupled with interests, is deemed non-binding it shall in no way affect any other portion of this presentment. That the arbitrator is permitted and allowed to adjust the arbitration award to no less than

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (*Henry Schein*), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter–even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

two times the original value of the properties associated with this agreement, plus the addition of fines, penalties, and other assessments that are deemed reasonable to the arbitrator upon presentment of such claim, supported by prima facie evidence of the claim.

23139.    The defaulting party will be estopped from maintaining or enforcing the original offer/presentment; i.e., the above referenced alleged **Commercial/Civil/Cause** as well as ALL commercial paper (negotiable instruments) therein, within any court or administrative tribunal/unit within any venue, jurisdiction, and forum the Undersigned may deem appropriate to proceed within in the event of ANY and ALL breach(s) of this agreement by Respondent(s) to compel specific performance and or damages arising from injuries there from. The defaulting party will be foreclosed by laches and or estoppel from maintaining or enforcing the original offer/presentment in any mode or manner whatsoever, at any time, within any proceeding/action. Furthermore, the respondents are foreclosed against the enforcement, retaliation, assault, infringement, imprisonment, trespass upon the rights, properties, estate, person whether legal, natural or otherwise of the presenter/petitioner and/or his interest and/or his estate retroactively, at present, post-actively, forever under any circumstances, guise, and or presumption!

## II.    NOTICE OF COMMON-LAW ARBITRATION:

23140.    Please be advised that in-as-much as the Undersigned has "secured" the "interest" in the "name" of the all-capital-letter "named" defendant as employed/used upon the face; and within, ALL documents/instruments/records within the above referenced alleged Commercial/Civil/Cause, to include any and all derivatives and variations in the spelling of said "name" except the "true name" of the Undersigned as appearing within the Undersigned's signature block herein below, through a Common-Law Copyright, filed for record within the Office of the Secretary of State, Las Vegas State of Nevada, and, having "perfected said interest" in same through incorporation within a Financing (and all amendments and transcending filings thereto), by reference therein, the Undersigned hereby; and herein, waives the Undersigned's rights as set, established, and the like therein, and as "perfected" within said Financing Statement acting/operating to "register" said Copyright, to allow for the Respondent(s) to enter the record of the alleged "court of record" within the above referenced alleged **Commercial/Civil/Cause** for the SOLE purpose to correct said record and comply with Respondent's(s') agreed upon duty/obligation to write the "order" and cause same to be transmitted to restore and release the Undersigned, the Undersigned's corpus, and ALL property currently under a "storage contract" under the Undersigned's Common-Law Copyrighted trade-name; i.e., the all-capital-letter "named" defendant within the above referenced alleged Commercial/Civil/Cause, within the alleged commercially "bonded" warehousing agency d.b.a. the commercial corporate Government juridical construct d.b.a. the United States. Please take special note, that the copyright is with reference to the name and its direct association and/or correlation to the presenter.

23141.    **NOTICE**: That the arbitrators "must not necessarily judge according to the strict law but as a general rule ought chiefly to consider the principles of practical business" *Norske Atlas Insurance Co v London General Insurance Co* (1927) 28 Lloyds List Rep 104

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc. (Henry Schein)*, the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

- "internationally accepted principles of law governing contractual relations"[Deutsche Schachtbau v R'As al-Khaimah National Oil Co [1990] 1 AC 295]

- If the contract (valid or otherwise) contains an arbitration clause, then the proper forum to determine whether the contract is void or not, is the arbitration tribunal.[For example, see Heyman v Darwins Ltd. [1942] AC 356]

- That any determination by the arbitrator is binding upon all parties, and that all parties agree to abide by the decision of the arbitrator, that the arbitrator is to render a decision based upon the facts and conclusions as presented within the terms and conditions of the contract. Any default by any party must be supported by proof and evidence of said default, that default shall serve as tacit acquiescence on behalf of the party who default it as having agreed to the terms and conditions associated with the self-executing binding irrevocable contract coupled with interests. That the arbitrator is prohibited from considering and/or relying on statutory law, as it has been held that any time any party relies on or enforces a statute, they possess no judicial power

- "A judge ceases to set as a judicial officer because the governing principals of administrative law provides that courts are prohibited from substituting their evidence, testimony, record, arguments and rationale for that of the agency. Additionally, courts are prohibited from their substituting their judgments for that of the agency." *AISI v US*, 568 F2d 284.

- "...Judges who become involved in enforcement of mere statutes (civil or criminal in nature and otherwise), act as mere "clerks" of the involved agency..." K.C. Davis, ADMIN. LAW, Ch. 1 (CTP. West's 1965 Ed.)

- "...their supposed 'court' becoming thus a court of limited jurisdiction' as a mere extension of the involved agency for mere superior reviewing purposes." K.C. Davis, ADMIN. LAW, P. 95, (CTP, 6 Ed. West's 1977) *FRC v G.E.* 281 US 464; *Keller v PE*, 261 US 428.

- "When acting to enforce a statute, the judge of the municipal court is acting an administrative officer and not as a judicial capacity; courts in administrating or enforcing statutes do not act judicially. but, merely administerially." *Thompson v Smith*. 155 Va. 376. l54 SE S83, 7l ALR 604.

- "It is basic in our law that an administrative agency may act only within the area of jurisdiction marked out for it by law. If an individual does not come within the coverage of the particular agency's enabling legislation the agency is without power to take any action which affects him." Endicott v Perkins, 317 US 501

- "It is not every act, legislative in form, that is law. Law is something more than mere will exerted as an act of power ...Arbitrary power, enforcing its edicts to the injury of the person and property of its subjects is not law." *Hurtado v. California* (1884) 110 US 515 (1984).

- Some of the aforementioned cases are not published, however, these are still fundamental principles of law, and one of the fundamental principles of arbitration is that the arbitrator sits as judge over the facts, and as such to preserve the sanctity of the process and arbitrator receives the same immunity as a judge and is exempt from prosecution and or review, unless they can be proved that the arbitrator intentionally ignored the evidence and acted in conspiracy to defraud the parties.

23142.    As the Undersigned has no desire NOR wish to tie the hands of Respondent(s) in performing Respondent's(s') agreed upon duty/obligation as set, established, and agreed upon within this Conditional Acceptance for Value and counter offer/claim for Proof of Claim and thereby create/cause a "breach" of said contractually binding agreement on the part of the Respondent(s), Respondent(s) is hereby; and herein, NOTICED that if this waiver of said Copyright is not liberal, NOR extensive enough, to allow for the Respondent(s) to specifically perform all duties/obligations as set, established, and agreed upon within the Conditional Acceptance for Value and counter offer/claim for Proof of Claim: Respondent(s) may; in "good faith" and NOT in fraud of the Undersigned, take all needed and required liberties with said Copyright and this waiver in order to fulfill and accomplish Respondent's(s') duties/obligations set, established, and agreed upon between the parties to this agreement.

23143.    If Respondent(s) has any questions and or concerns regarding said Copyright and or the waiver, Respondent(s) is invited to address such questions and or concerns to the Undersigned in writing, and causing said communiqués to be transmitted to the Undersigned and below named Notary/Third Party. The respondents

9 | Page

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (*Henry Schein*), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

have acted as if the contract quasi-or otherwise does not place a binding obligation upon their persons, upon their organizations, upon their institutions, upon their job qualifications, and breaching that obligation breaches the contract, for which they cannot address due to the direct conflict of interest. It is as a result of that conflict of interest that binding arbitration shall be instituted

23144.   Your failure to respond, and this would include each of the respondents by their representative, and if represented by the Atty. Gen., such representation must be responsive for each State and/or State organization/department/agency, separately and severally to each of the points of averment, failure to respond to a single point of averment will constitute acquiescence, forfeiture, and a waiver of all rights with respects all of the points raised in this presentment.

### III.    NOTICE TO AGENT IS NOTICE TO PRINCIPLE AND VICE VERSA

23145.   **NOTICE**: In this Conditional Acceptance for Value and counter offer/claim for Proof of Claim(a) the words "include," "includes," and "including," are not limiting; (b) the word "all" includes "any" and the word "any" includes "all"; (c) the word "or" is not exclusive except when used in conjunction with the word "and"; as in, "and/or"; and (d) words and terms (i) in the singular number include the plural, and in the plural, the singular; (ii) in the masculine gender include both feminine and neuter.

23146.   This presentment shall constitute a CLAIM against the assets of your institution and is valid upon your failure to comply with the requirement of this agreement and to VALIDATE NOT VERIFY THE COMPREHENSIVE ACCOUNTING!

23147.   **NOTICE**: All titles/names/appellations of corporate Government juridical constructs, and branches, departments, agencies, bureaus, offices, sub-whatever's, and the like thereof, include any and all derivatives and variations in the spelling of said titles/names/appellations.

23148.   **NOTICE**: Any and all attempts at providing the requested and necessary Proof of Claims raised herein above; and, requesting the additional ten (10) Calendar days in which to provide same; and, to address any and all questions and concerns to the Undersigned in regards to the Stated Copyright and waiver herein expressed, in any manner other than that provided for herein will be deemed non-responsive.

The Undersigned extends to the Respondent(s) the Undersigned's appreciations and thanks for Respondent's(s) prompt attention, response, production of above Proof(s) of Claim and assistance in this/these matter(s). This presentment is not to be construed as an acceptance and/or application and/or subscription and/or request for license, admittance to any jurisdiction quasi-or otherwise. But shall remain as a direct objection to any and all claims to the contrary.

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (**Henry Schein**), the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter—even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.

Sincerely,

Without Recourse

Johnson : Mark - C.

**Mark C. Johnson a Natural Man**

COU-145590633898764-74936071959ASEP-81977 © is secured and reserved with all rights retained, Private Property no trespass permitted or allowed under common law restrictions and prohibitions.

(THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK)

In a unanimous decision on January 8, 2019 in *Henry Schein, Inc. v. Archer & White Sales, Inc.* **(Henry Schein)**, the US Supreme Court confirmed that the United States is a pro-arbitration jurisdiction that will honor parties' agreements to arbitrate. Specifically, where an arbitration clause clearly delegates the decision of arbitrability to the arbitrators, courts should have no say in the matter--even if they perceive the argument in favor of arbitration as "wholly groundless." This decision provides clarity for potential disputants and is in line with prior Court precedent prohibiting courts from reviewing the merits of a dispute when properly delegated to an arbitrator.