IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALAN D. MEEKINS,
    *Pro se* Petitioner,

v.                                                              Civil No. 3:19cv501 (DJN)

LAKEVIEW LOAN SERVICING, LLC,
*et al.*,
    Respondents.

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Confirm Arbitration Award (ECF No. 1) filed by Petitioner Alan D. Meekins ("Petitioner"). Respondents RoundPoint Mortgage Servicing Corporation ("RoundPoint"), Lakeview Loan Servicing, LLC ("Lakeview"), and Loancare, LLC ("Loancare") (collectively, "Respondents") have filed oppositions. (ECF Nos. 10-11.) Additionally, Lakeview and Loancare (collectively, "Counterclaimants") have filed an Amended Counterclaim. (Amended Counterclaim for Declaratory Judgment and Injunctive Relief ("Am. Counterclaim") (ECF No. 17).). Counterclaimants have also filed an Amended Motion for Preliminary Injunction against Petitioner and Innovative Holdings Inc. d/b/a Sitcomm Arbitration Association ("SAA"). (ECF No 18.) For the reasons stated herein, Petitioner's Motion is hereby DENIED WITH PREJUDICE. The Amended Motion for Preliminary Injunction is hereby DENIED, and the Amended Counterclaim is hereby DISMISSED without prejudice.

## I. BACKGROUND

This dispute arises out of a mortgage obtained by Petitioner.[1] In June 2017, Petitioner obtained a loan in the amount of $359,900.00 from Embrace Home Loans, Inc. (Am. Counterclaim at ¶ 10.) In October 2017, the servicing of the loan was transferred to Lakeview as servicer and Loancare as subservicer. (*Id.* at ¶ 12.) At some point, Petitioner apparently defaulted on the loan, and Loancare sent him notices regarding the default. (*Id.* at ¶ 16.) In March 2018, Petitioner sent Lakeview a document titled "Tender of Payment Offering," which appeared to assert that the United States Government had an obligation to pay $431,700 to Lakeview on Petitioner's behalf. (ECF No. 17-3.) On February 12, 2019, Petitioner sent a document to Respondents, titled a "Show of Cause Proof of Claim Demand" that contained a litany of difficult to comprehend legal and factual assertions. (ECF No. 10-3). It stated that Respondents "will have agreed to and consented through 'tacit acquiescence' to ALL the facts in relation to the above referenced alleged Commercial/Civil/Cause." (*Id.*) It further provided that Respondents will have consented to arbitration through "tacit acquiescence" should they not respond within ten days. (*Id.*) Then, on February 25, 2019, Petitioner sent a "Notice of Default" that stated, "you are now a party to the contract that you have received and you have not complied to the terms of the contract" and that failure to respond within three days would result in "default and we will proceed to get a judgment against you through arbitration." (ECF No. 17-4.)

---

[1] The Court takes these facts from Counterclaimants' Amended Counterclaim and provides them for background purposes only. The Motion to Confirm does not concern the merits of the underlying dispute, and the Court does not consider these background facts either true or untrue.

On May 18, 2019, the arbitrator purported to enter a "Notice of Arbitration Hearing," setting a hearing for June 4, 2019. (ECF No. 17-8.) On May 23, 2019, Lakeview sent a cease and desist letter to Petitioner. (ECF No. 17-6.) On June 20, 2019, arbitrator Sandra Goulette in Laurel, Mississppi, awarded Petitioner $1,079,700.00 from Respondents. (("Award") (ECF No. 1-1) at 17.) Thereafter, on July 10, 2019, Petitioner filed his Motion to Confirm, along with a copy of the Award. (ECF No. 1.)

## II.   DISCUSSION

Petitioner filed the Motion to Confirm, asking the Court to confirm an arbitration award by SAA. Respondents claim that they never entered into an agreement to arbitrate any disputes with Petitioner; therefore, the Court cannot confirm any award. (RoundPoint's Opp. to Mot. to Confirm Arbitration Award ("RoundPoint's Opp.") (ECF No. 10); Counterclaimants' Obj. to Mot. to Confirm Arbitration Award ("Counterclaimants' Opp.") (ECF No. 11-1).) Further, Counterclaimants request that the Court vacate the Award. (Counterclaimants' Opp. at 5-7.)

### A.   The Court Will Not Confirm the Award.

Under the Federal Arbitration Act ("FAA"), a court may confirm an arbitration award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration. . . ." 9 U.S.C. § 9. To obtain confirmation of an award, the statute requires the moving party to file (1) the agreement, (2) the award, and (3) each notice, affidavit, or other paper used to confirm, modify or correct the award. 9 U.S.C. § 13. This allows the Court to determine whether a valid arbitration agreement and award exist upon which it can base its judgment. *See United Cmty. Bank v. Arruarana*, 2011 WL 2748722, at *2 (W.D.N.C. July 12, 2012) ("Without the filings required by § 13, the Court is unable to conclude from the record that a valid arbitration agreement and award exist and therefore is unable to

3

determine whether the Petitioner is entitled to judgment as a matter of law."). Indeed, the FAA requires an agreement to arbitrate before the Court will compel arbitration. *See* 9 U.S.C. § 2 (arbitration agreements enforceable "save upon such grounds exist at law or equity for the revocation of any contract"). Whether a party agreed to arbitrate "is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998).

Here, Petitioner did not file any agreement with his Motion to Confirm, in contravention of Section 13's requirement. Petitioner later attempted to file a purported contract as part of his Motion to Supplement the Record.[2] (ECF No. 15-1.) However, what he labeled as "Contract Between the Parties" and titled "Show of Cause Proof of Claim Demand" does not amount to an enforceable agreement between the parties. The submission from Petitioner fails to form a contract under basic hornbook contract law.

To form an enforceable contract in Virginia, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 222 Va. 361, 364 (1981). "Mutual assent by the parties to the terms of a contract is crucial to the contract's validity." *Wells v. Weston*, 229 Va. 72, 78 (1985). "Mutual assent is determined from the reasonable meaning of a party's expressions — his words and acts — *actually communicated* to the other party to the purported contract." *Moorman v. Blackstock Inc.*, 276 Va. 64, 75 (2008).

---

[2] The Court will grant Petitioner's Motion to Supplement the Record (ECF No. 15), but notes that it does not cure the deficiencies in his Motion to Confirm. Although Counterclaimants opposed the Motion to Supplement (ECF No. 16), they also filed what appears to be the identical "Show of Cause Proof of Claim Demand" with their Counterclaim. (ECF No. 10-3.)

4

Here, nothing in the record demonstrates a scintilla of mutual assent. The signatures of Respondents appear nowhere on the document. Nor does Petitioner suggest that they signed the document. Instead, Petitioner bases Respondents' assent on their failure to respond to Petitioner's demand rather than any affirmative act of acceptance.[3] Petitioner offers no actions, words or expressions communicated from Respondents that could constitute acceptance of Petitioner's demand. Without mutual assent, a contract does not exist. *Id.* Because Petitioner has not presented a valid agreement whereby the parties agreed to arbitrate a dispute, the Court will not confirm the Award under the FAA.

### B. The Court Will Vacate the Award.

Respondents also ask the Court to vacate the Award. (Counterclaimants' Opp. at 5-7.) The FAA provides that a district court may vacate an arbitration award:

1. where the award was procured by corruption, fraud, or undue means;

2. where there was evident partiality or corruption in the arbitrators, or either of them;

3. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

4. where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Further, courts recognize common law grounds for vacating awards, including "those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230,

---

[3] Although again difficult to discern, Petitioner may contend that the "Proof of Claim Demand" serves as an amendment to the contracts underlying his mortgage, which he has not filed with the Court. (Pet.'s Mot. to Am. Record (ECF No. 15) at 3.) Even if so, he has presented no evidence that Respondents assented to such an amendment.

5

234 (4th Cir. 2006). However, the "process and extent of federal judicial review of an arbitration award are substantially circumscribed." *Id.* Additionally, the Court undertakes its review of the award with an understanding of the strong "national policy favoring" arbitration. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

### i. *The Court Will Vacate the Award Pursuant to the FAA.*

Respondents argue that the Court should vacate the Award under the "fraud, corruption, or undue means" provision of Section 10(a) of the FAA. (Counterclaimants' Opp. at 6.) The Court agrees. Petitioner obtained an arbitration "hearing" by sending Respondents an incomprehensible agreement to arbitrate and using their non-response to initiate an arbitration. Moreover, the Award itself does not appear to have any grounding in fact or law. The Court expresses great skepticism about the validity of SAA as an arbitration entity.[4] Indeed, courts around the country have expressed doubts regarding SAA's validity. *See Kalmowitz v. Fed. Home Mortg. Corp.*, 2019 WL 6249298, at *2 (E.D. Tex. Oct. 22, 2019) ("The purported

---

[4] SAA's "About Us" page on its website provides:

> We are a small group of individuals who have come together with our unique skills and history to help those who seek to resolve their contractual disputes and other matters in a peaceful setting.
>
> Our goal in our aim is to help individuals reduce the burden on governments, their courts, and their other administrative agencies. One way we do this is by helping the consumer with a preformatted generalize [*sic*] contract that includes all of the elements necessary for enforcement.
>
> As was brought out by the state of New Hampshire, the corporate state officials have by their silence deceived the American people, we are attempting to help balance or right the wrong/ship.

*See* The Sitcomm Arbitration Association SAA Home Page, https://saalimited.com/More%20about%20us.html (last visited December 30, 2019).

6

arbitration agreement and award do not appear to have any meritorious basis in fact or law, and Sitcomm does not appear to be a valid entity of arbitration."); *U.S. Bank National Ass'n v. Nichols*, 2019 WL 4276995, at *2 (N.D. Okla. Sep. 10, 2019) (noting that the SAA award "is a bizarre jumble of inconsistent, nonsensical word salad" full of "legally bizarre determination[s] contrary to hornbook contract law").

The Award contains no specific factual findings or coherent legal conclusions. It only vaguely references breached obligations under a purported contract dated February 12, 2019. (Award at 4.) Nor did the arbitrator discuss the specific terms of the contract or attach a copy of the contract to the Award. Presumably, the purported contract refers to the "Show of Cause Proof of Claim Demand" sent by Petitioner to Respondents. But, as discussed above, that document does not amount to a contract. Most of the language in the Award appears as an effort to convince a reviewing court of its legitimacy; yet, the language has the opposite effect. The Court has little trouble in determining that the Award has no legal validity and could only have been the product of undue means. Therefore, the Court will vacate the award pursuant to 9 U.S.C. § 10(a).

### ii. *The Court Will Vacate the Award Pursuant to the Common Law.*

In addition to satisfying the statutory grounds for vacatur, the Court finds that common law grounds exist to vacate the Award. Courts may vacate an award when the award fails to draw its essence from the contract or the award evidences a manifest disregard of the law. *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). An arbitration award "fails to draw its essence from the agreement only when the result is not rationally inferable from the contract." *Id.* at 235. Similarly, "a manifest disregard of the law is established where the

7

arbitrator understands and correctly states the law, but proceeds to disregard the same." *Id.* The Court finds both defects present in the Award.

First, the Award fails to "draw its essence from the contract." Indeed, it has no basis in any contract. Neither the Award nor the purported contract identify any specific obligations that Respondents have allegedly breached. Although the Award quotes from the purported contract, it does not identify any specific dispute arising from the contract, let alone address the merits of such a dispute. Even if the "Proof of Claim Demand" constituted a contract, the result of the Award — a $1,079,700 award in favor of Petitioner — "is not rationally inferable" from the purported contract. Moreover, Respondents never agreed to arbitrate through any contract. Accordingly, the Court finds that the Award does not draw its essence from a contract wherein the parties agreed to arbitrate.

Second, the arbitrator demonstrated a "manifest disregard of the law" in reaching the Award. The arbitrator found "that all elements that form a contractual agreement and a legally commercial binding obligatory relationship are present." (Award at ¶ 6.) Despite acknowledging that contracts require certain elements, the arbitrator also stated that the parties "entered into a written, self-executing, binding, irrevocable, contractual agreement coupled with interests," and that Respondents "have failed to properly respond after they received the counter offer, whereby such nonresponse would equate to tacit acquiescence thereby creating an estoppel respecting the Respondent(s) and any future claims and/or prior claims and/or present claims associated with this instant matter." (*Id.*) As described above, nothing in the record supports that the parties mutually assented to the terms of the purported contract. The arbitrators finding that they had formed a contract thus entirely disregards the law.

8

Accordingly, the Court finds that the Award suffers from both of the common law defects that warrant vacatur of an arbitration award. Accordingly, the Court hereby vacates the Award.

### C. The Court will Dismiss the Counterclaim.

Counterclaimants have also filed an Amended Counterclaim against Petitioner and SAA. The Amended Counterclaim does not seek monetary damages, but instead seeks a declaratory judgment and injunctive relief. (Am. Counterclaim at 9.) Specifically, the Counterclaim requests the following relief from the Court:

a. Enter a Final Declaratory Judgment determining that Meekins (i) is entitled to no relief as set forth in his Petition, (ii) has not obtained a valid and legally enforceable arbitration award against Counterclaimants, and (iii) cannot enforce the Award against the Counterclaimants;

b. Declare null, void, and of no legal effect the Award;

c. Permanently enjoin Meekins, along with his agents, servants, employees, and attorneys from (i) pursuing the relief sought in the Petition and (ii) attempting to confirm and/or enforce the Award against Counterclaimants;

d. Permanently enjoin the SAA, along with its arbitrators, agents, servants, employees, and attorneys from (i) seeking to invoke jurisdiction over Counterclaimants, (ii) commencing or continuing any arbitration proceeding against Counterclaimants, and (iii) entering or seeking to enforce against Counterclaimants the Award of any arbitration award entered by the SAA.

(*Id.*)

Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction . . . *may declare* the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). This Act allows the courts to hear those cases and gives the courts discretion in whether to declare the rights of litigants, but it does not compel the courts to enter a declaratory judgment — *i.e.*, litigants do not have a right to judgment in such cases. *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). In deciding whether to exercise this

9

discretion, courts look to "the teachings and experience of the courts concerning the functions and extent of federal judicial power." *Id.* Courts may look to whether the declaratory relief sought "will help in clarifying and settling legal relationships and will terminate and afford relief from the uncertainty, insecurity, and controversy driving the suit." *Reyazuddin v. Montgomery Cty.*, 754 F. App'x 186, 192 (4th Cir. 2018) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998)).

Here, the Court will decline to exercise its discretion in declaring the rights of the litigants. By denying Petitioner's Motion to Confirm and vacating the Award, the Court has already afforded Counterclaimants the declaratory relief that they seek in (a)-(c) of their Amended Counterclaim. Petitioner can no longer seek to enforce the Award. As such, any further declaration would "neither clarify any issue of law . . . nor provide relief from uncertainty." *Pitrolo v. County of Buncombe*, 689 F. App'x 619, 621 (4th Cir. 2014). Therefore, the Court will dismiss Counterclaimants' declaratory relief claims.

Nor will the Court grant the injunctive relief against SAA sought by Counterclaimants. SAA was not an original party to this lawsuit, and Counterclaimants seek to join them through their counterclaim, presumably through the permissive joinder mechanism of Fed. R. Civ. P. 20. (*See* Am. Counterclaim ¶ 5 ("Joinder of SAA as Counterclaim Defendant is proper because rights to relief are asserted against Defendants jointly and severally with respect to or arising out of the same transaction, occurrence, or series of transactions or ocurrences. . .").) "Rule 20 gives courts wide discretion concerning permissive joinder of parties and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes." *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). Moreover, "the court has discretion to deny joinder if it determines that the addition of a party

10

under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." *Id.*

Counterclaimants essentially seek to bring SAA into this suit regarding Petitioner's faulty arbitration Award to preclude SAA from entering any other arbitration awards against it in the future. Given that the Court has resolved the dispute between Petitioner and Respondents, allowing the joinder of SAA for the sole purpose of enjoining it from entering *other* arbitration awards would not further the objectives of Rule 20. Moreover, despite the invalidity of the instant Award and the Court's doubts regarding the validity of SAA, the record has not developed sufficiently to allow the Court to determine that SAA cannot issue a valid arbitration award under any circumstances. Although the Court sympathizes with Counterclaimants' need to defend against apparently sham arbitration awards, the Court does not believe this otherwise dismissed suit between Petitioner and Respondents presents the proper vehicle for drawing in an additional party and litigating the issue.[5] Therefore, the Court will deny the joinder of SAA and dismiss the Amended Counterclaim without prejudice.

### D. The Court Will Deny Counterclaimants' Motion for Preliminary Injunction.

For many of the same reasons, the Court will deny Counterclaimants' Amended Motion for a Preliminary Injunction. Counterclaimants request that the Court issue a preliminary

---

[5] Because the Court has denied the joinder of SAA to this suit, Counterclaimants' request for default against SAA (ECF No. 28) will be denied. Even if the Court allowed the joinder of SAA, before entering default judgment, the Court must determine whether the facts in the Counterclaim, when deemed admitted, properly state a claim. *GlobalSantaFe Corp. v. Globasantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Given Fed. R. Civ. P. 9's heightened pleading requirements for fraud, and the required showing for a permanent injunction, the Court doubts, without finding, that the Counterclaim provides sufficient basis for entering a default judgment granting a permanent injunction against SAA.

11

injunction enjoining Petitioner and SAA "from pursuing the relief sought in Meekins' petition to confirm SAA's purported arbitration award dated June 10, 2019." (Mem. in Supp. Am. Mot. for Prel. Inj. (ECF No. 19) at 3.) Because the Court has denied Petitioner the relief sought in his petition and vacated the award, Counterclaimants have obtained the relief that they sought, and their motion is now moot. Accordingly, the Motion and Amended Motion for a Preliminary Injunction are hereby DENIED AS MOOT. Likewise, Petitioner's Motion to Strike Counterclaimant Defendant's Preliminary Injunctions and Declaratory Judgment (ECF No. 23) is hereby DENIED AS MOOT.[6]

### E. RoundPoint's Motion for Sanctions Will Be Taken Under Advisement.

RoundPoint also moves for sanctions against Petitioner pursuant to Rule 11 of the Federal Rules of Civil Procedure. (RoundPoint's Mot. for Sanctions (ECF No. 24).) Specifically, RoundPoint argues that a reasonable pre-filing inquiry would have revealed that Petitioner's Motion to Confirm lacked any evidentiary or legal support. (Mem. in Supp. Mot. for Sanctions ("Sanctions Mem.") (ECF No. 24-1) at 4.) Further, RoundPoint contends that Petitioner filed his Motion solely for the purposes of harassing RoundPoint and obtaining a fraudulent money judgment. (*Id.* at 6.) As relief, RoundPoint seeks reasonable attorney's fees. (*Id.* at 7.) RoundPoint has complied with the safe-harbor provision of Rule 11(c)(2) by giving Petitioner an opportunity to withdraw his Motion to Confirm before filing the Motion for Sanctions. Petitioner did not withdraw.

---

[6] The Court struggles to discern the relief sought by Petitioner in that motion. The caption suggests that he has moved to strike the Motion for Preliminary Injunction and/or the Counterclaim. Because neither remain pending, Petitioner's motion is also now moot.

Rule 11(c) allows the Court to impose sanctions on any party that has violated Rule 11(b) after notice and reasonable opportunity to respond. Rule 11(b), in turn, states that by presenting a motion to the court, an attorney or unrepresented party certifies that, after a reasonable investigation under the circumstances:

1. it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
2. the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
3. the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
4. the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(2). "The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard County*, 474 F. App'x 947, 950 (4th Cir. 2012).

Undoubtedly, Petitioner has pursued unmeritorious litigation. As discussed above, the Court finds that Petitioner's claims and other legal contentions are not warranted under existing law or by a nonfrivolous argument for extending, modifying or reversing existing law. Petitioner had no basis to claim that Respondents had ever agreed to arbitrate any claims with him. The lack of legal or factual support for Petitioner's Motion also suggests that he presented it for an improper purpose, such as to harass Respondents.

Before imposing sanctions under Rule 11, however, the Court will allow Petitioner to show cause as to why his conduct has not violated Rule 11(b).[7] Within fourteen (14) days of the entry of this Opinion, Petitioner shall show cause as to why the Court should not impose sanctions against him in favor of all Respondents. Specifically, Petitioner should address the legal basis for his argument that Respondents agreed to arbitration, including any legal support for his argument that "tacit acquiescence" can form a contract. Petitioner's submission shall not exceed five pages and must comply with the requirements of the Local Rules of the Eastern District of Virginia.[8] Failure to conform to these requirements will result in the Court not considering Petitioner's brief. Respondents may file a response with seven (7) days of Petitioner's submission. Any response by Respondents should be limited to responding to new, nonfrivolous arguments raised by Petitioner, and should also be limited to five pages.

**THE COURT ALSO HEREBY NOTIFIES PETITIONER THAT A FAILURE TO RESPOND TO THE SHOW CAUSE ORDER WILL RESULT IN THE COURT AWARDING ATTORNEY'S FEES TO RESPONDENTS.**

### III. CONCLUSION

For the foregoing reasons, the Court will DENY WITH PREJUDICE Petitioner's Motion to Confirm Arbitration (ECF No. 1) and his Motion to Strike (ECF No. 23) and will VACATE the Award. Further, the Court will DENY Counterclaimant's Motion for Preliminary Injunction

---

[7] The Court notes that it could impose sanctions without forewarning Petitioner, given that RoundPoint already sent Petitioner a Rule 11 letter and Petitioner did not respond to RoundPoint's Motion for Sanctions. Fed. R. Civ. P. 11(c)(1)-(2). However, because Petitioner is proceeding *pro se*, the Court will also utilize the mechanism provided by Rule 11(c)(3), and afford him an additional opportunity to show cause why his conduct has not violated Rule 11(b).

[8] Specifically, E.D. Va. L.R. 7(F)(3) requires that all briefs be "written in 12 point Roman style or 10 pitch Courier style with one inch margins" and be double-spaced.

and Amended Motion for Preliminary Injunction (ECF Nos. 13, 18) and their Request for Entry of Default. (ECF No. 28.) Additionally, Counterclaimants' Counterclaim and Amended Counterclaim will be DISMISSED WITHOUT PREJUDICE. (ECF Nos. 12, 17.) The Court will take RoundPoint's Motion for Sanctions (ECF No. 24) under advisement, with Petitioner ORDERED to show cause, as described above, why his conduct has not violated Rule 11(b).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, and send a copy of this Memorandum Opinion to *pro se* Petitioner at his address of record. The Clerk shall certify on the docket when this Memorandum Opinion has been mailed.

It is so ORDERED.

### NOTICE TO PETITIONER

To the extent that Petitioner believes that he has grounds to appeal this decision, Petitioner must file written notice of appeal with the Clerk of the Court within thirty (30) days of the entry of the Order. Failure to file a timely appeal may result in the loss of the right to appeal.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: December 30, 2019

15

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALAN D. MEEKINS,
*Pro se* Petitioner,

v.                                                                 Civil No. 3:19cv501 (DJN)

LAKEVIEW LOAN SERVICING, LLC,
*et al.*,
Respondents.

## **ORDER**

This matter comes before the Court on Petitioner's Motion to Confirm Arbitration. For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. Petitioner's Motion to Confirm Arbitration Award (ECF No. 1) is hereby DENIED WITH PREJUDICE and the arbitration award is hereby VACATED;

2. Respondents Lakeview Loan Servicing, LLC's ("Lakeview") and Loancare, LLC's ("Loancare") (collectively, "Counterclaimants") Motion for Preliminary Injunction (ECF No. 13) and Amended Motion for Preliminary Injunction (ECF No. 18) are hereby DENIED AS MOOT;

3. Petitioner's Motion to Supplement the Record (ECF No. 15) is hereby GRANTED;

4. Counterclaimants' Counterclaim (ECF No. 12) and Amended Counterclaim (ECF No. 17) are hereby DISMISSED WITHOUT PREJUDICE;

5. Petitioner's Motion to Strike Counterclaim Defendants' Preliminary Injunctions and Declaratory Judgment (ECF No. 23) is hereby DENIED AS MOOT;

6. Counterclaimants' Request for Entry of Default (ECF No. 28) is hereby DENIED;

7. Respondent RoundPoint Mortgage Servicing Corporation's Motion for Sanctions (ECF No. 24) is hereby taken under advisement. Petitioner shall have fourteen (14) days to show cause as to why the Court should not impose sanctions on him in accordance with the instructions set forth in the accompanying Memorandum Opinion. **THE COURT HEREBY NOTIFIES PETITIONER THAT FAILURE TO RESPOND TO THE SHOW CAUSE ORDER WILL RESULT IN THE COURT AWARDING ATTORNEY'S FEES TO RESPONDENTS.**

Let the Clerk file a copy of this Order electronically, notify all counsel of record, and send a copy of this Order to *pro se* Petitioner at his address of record. The Clerk shall certify on the docket when this Order has been mailed.

It is so ORDERED.

### NOTICE TO PETITIONER

**To the extent that Petitioner believes that he has grounds to appeal this decision, Petitioner must file written notice of appeal with the Clerk of the Court within thirty (30) days of the entry of this Order. Failure to file a timely appeal may result in the loss of the right to appeal.**

                                                                                             _____/s/_____
                                                                                             David J. Novak
                                                                                             United States District Judge

Richmond, Virginia
Dated: December 30, 2019