IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LARRY KALMOWITZ, REBECCA KALMOWITZ, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HOME MORTGAGE CORPORATION, JACK O'BOYLE AND ASSOCIATES, SPECIALIZED LOAN SERVICING LLC, WELLS FARGO BANK N.A., WELLS FARGO HOME MORTGAGE, <br><br> Defendants. | § § § § § § § § § § § § § § CIVIL ACTION NO. 6:19-MC-00010-JCB-JDL |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Before the Court is a Motion to Confirm Arbitration Award (Doc. No. 1) filed by Plaintiffs Larry and Rebecca Kalmowitz ("Plaintiffs"). Defendant Specialized Loan Servicing LLC ("Defendant" or "SLS") has filed a response (Doc. No. 7) and Plaintiffs have filed a reply (Doc. No. 8). For the reasons stated herein, the Court **RECOMMENDS** that Plaintiffs' motion (Doc. No. 1) be **DENIED**.

### BACKGROUND

Plaintiffs initiated this action on August 26, 2019, by filing their motion (Doc. No. 1) seeking confirmation of an arbitration award allegedly issued by arbitrator Keisha Jones in Covington, Georgia on June 13, 2019. (Doc. No. 1 at 2.) The alleged arbitration includes Plaintiffs and Defendant SLS, as well as co-defendants Federal Home Loan Mortgage Corporation, Jack O'Boyle & Associates, Wells Fargo Bank N.A., and Wells Fargo Home

1

Mortgage, and centers around a $197,000 promissory note securing the couple's residence in Tyler, Texas. (*Id.*; Doc. No. 7 at 2.) According to Plaintiffs, "[o]n or about February 21, 2019 [Plaintiffs] entered into an agreement with Specialized Loan Servicing LLC…which provided that the parties would settle any dispute arising out of the agreement by arbitration." (Doc. No. 1 at 4.) Plaintiffs then filed an arbitration claim with Sitcomm Arbitration Association ("Sitcomm") on May 13, 2019, claiming $1,751,000.00 in damages per defendant. *Id.* On June 13, 2019, Plaintiffs were allegedly issued that award in full as to each defendant. *Id.*

SLS responds that the arbitration proceeding itself, along with any associated award, is fraudulent and part of a "debt elimination scheme being marketed to consumers on the internet who are in financial distress and looking for an easy way to get out of troubles." (Doc. No. 7 at 1.) Sitcomm allegedly is one of a number of entities performing fraudulent debt elimination schemes where arbitration proceedings are held and multi-million dollar "awards" are given to petitioners facing bankruptcy or foreclosure. *Id.* at 6. SLS notes that the Northern District of Oklahoma has previously dismissed a Sitcomm arbitration award as frivolous and meritless. *Id.* at 7; *see U.S. Bank Nat'l Ass'n v. Nichols*, No. 19-CV-482, 2019 WL 4276995 at *1 (N.D. Okla. Sept. 10, 2019).

In their reply, Plaintiffs claim that because SLS "missed their allotted time window to raise any issues with the arbitration award," the court must confirm it. (Doc. No. 8 at 1.) Plaintiffs rely on the Federal Arbitration Act and Texas General Arbitration Act to argue that the Court may not vacate the award. *Id.* at 3–6. In addressing Defendant's arguments, Plaintiffs state that *Nichols* does not apply to this action because it concerns removal of an arbitration award, not confirmation of one. *Id.* at 6. Plaintiffs instead cite *Teverbaugh v. Lima One*, 1:19-CV-05482

2

(N.D. Ill. Aug. 22, 2019), where a Sitcomm arbitration award was previously confirmed, in support of their right to confirmation. *Id.*

## DISCUSSION

"To assure that arbitration serves as an efficient and cost-effective alternative to litigation, and to hold parties to their agreements to arbitrate, the [Federal Arbitration Act ("FAA")] narrowly restricts judicial review of arbitrators' awards." *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 280 (5th Cir. 2007). An arbitration award must be confirmed unless the court determines the award should be vacated under FAA Section 10 or modified under FAA Section 11. *Householder Grp. v. Caughran*, 354 Fed.Appx. 848, 850 (5th Cir. 2009) (citing *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)). Arbitration awards cannot be vacated on any nonstatutory ground; FAA Section 10 therefore provides the exclusive grounds for vacatur. *Id.*; 9 U.S.C. § 10.

FAA Section 10(a) provides that a federal district court may make an order vacating the award upon the application of any party to the arbitration:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Further, the merits of any party's claim are not grounds for vacatur of an arbitration award. *See Householder Grp.*, 354 Fed.Appx.at 850.

3

Here, SLS argues that Plaintiff's arbitration award must be vacated under 9 U.S.C. § 10(a)(1) because it was procured through fraud. (Doc. No. 7 at 6.) The Court agrees. The purported arbitration agreement and award do not appear to have any meritorious basis in fact or law, and Sitcomm does not appear to be a valid entity of arbitration.[1] The Court finds the District Court for the Northern District of Oklahoma's order in *Nichols* discussing a Sitcomm arbitration award particularly relevant here:

> The purported arbitration award is unlike any other this Court has ever seen. It is devoid of any specific fact-finding. While it references a contract dated December 20, 2018, there is no actual discussion of what its terms are, nor does it recite what the consideration or subject matter of the purported contract was, whom the specific parties to the purported contract were, whether they actually executed any document and, if so, when, and it does not address a method of service or notice, if any, that was given to any of the "Respondent(s)." The only "terms" of the "contract" that are cited are the same "terms" as those in the purported unilateral "conditional acceptance" "contract template" that Sitcomm Arbitration Association makes available on its own website. The arbitrator found that the respondents, through "tacit acquiescence" to an unspecified "counter offer" or "conditional acceptance," gave the Nichols the right to enforce a "self-executing binding contract coupled with interests," which "stands as irrevocable." Most of the purported arbitration document appears directed toward convincing any court that the award is legitimate and that a court, when requested, must confirm it.

---

[1] Sitcomm's "About Us" page on its website provides:

> We are a small group of individuals who have come together with our unique skills and history to help those who seek to resolve their contractual disputes and other matters in a peaceful setting. Our goal in [sic] our aim is to help individuals reduce the burden on government, their courts, and their other administrative agencies. One way we do this is by helping the consumer with a preformatted generalize [sic] contract that includes all of the elements necessary for enforcement. As was brought out by the state of New Hampshire, the corporate state officials have by their silence deceived the American people, we are attempting to help balance or right the wrong/ship.
>
> How we help: The Sitcomm Arbitration Association Provide [sic] several services, including electronic arbitration, where the arbitration is conducted completely based on the record. This requires that the arbitrator document there [sic] reviewing the entire contract. For the less extensive contracts it is $100 an hour with a two hour minimum payment, plus services, plus fees, plus costs. Please review our program prices on our homepage for more details on this.

*See* https://saalimited.com/More%20about%20us.html.

*Nichols*, 2019 WL 4276995 at *3 (internal citations omitted). The *Nichols* court characterizes the documents associated with the Sitcomm award as "a bizarre jumble of inconsistent, nonsensical word salad" full of "legally bizarre determination[s] contrary to hornbook contract law." *Id.* at *4.

The arbitration award, "counteroffer," and other documents associated with Plaintiffs' claims are identical to the documents in the *Nichols* case, excepting specifics such as names, dates, and monetary amounts. (*See* Doc. 1, Ex. A-E.) As in *Nichols*, these documents do not support the existence of any valid agreement between Plaintiffs and SLS to arbitrate, any proof of a legitimate arbitration proceeding, or any legal theories upon which Plaintiffs could claim a right to arbitration with SLS. *See id.* Many of the claims rest upon the nebulous concept of "the common law." (*See* Doc. No. 1-1 at 1, 3, 6, 9, 15.) Multiple purported bases for the arbitration exist in some form throughout the "award," including:

> It has been alleged and thoroughly proven that the Respondent(s) listed above have by their own accord agreed to all the terms of the contract, that they have committed the offenses claimed in the contract and have acted against the interests of the Claimant's [sic], depriving them of their right to property, their right to contract, the right to The Pursuit of Happiness and the enjoyment of life. They have admitted and agreed that they have violated the Claimant's constitutional and common law rights, that they had [sic] intentionally, knowingly and deliberately failed to perform as agreed, have forsook their obligatory duty of care and thus created a dispute that requires a resolution by [Sitcomm] and any subsequent award.

*Id.* at 4, ¶8.

The document never states details of the "contract" in any concrete terms. One paragraph mentions that the parties "entered into a written, self-executing, binding, irrevocable, contractual agreement coupled with interests, for the complete resolution of their misconvictions and other conflicts respecting their previous relationship" created by "tacit acquiescence, thereby creating an estoppel" for any future claims. *Id.* at 5. Despite Plaintiff's contentions, "tacit acquiescence"

5

to a "conditional acceptance for value" does not create a contractual relationship. *Nichols*, 2019 WL 4276995 at *4. The whole of the 22-page document, drafted with repetitive, nonsense legalese, contains no factual or legal conclusions from which this Court could deduce the existence of a valid contract, let alone a valid agreement to arbitrate.

Further, Plaintiffs' basis for arbitration and contract with SLS appears to be, at least in part, based on the national banking emergency from 1933 and the Emergency Economic Banking Relief Act. (Doc. No. 1-1 at 12-13.) Plaintiffs attempted to dispose of their mortgage obligations through an "equitable remittance coupon" in the amount of $275,000. (Doc. No. 1-3 at 2.) While Plaintiffs' arguments are difficult to decipher, they appear to share some elements with the "mortgage-backed securitizations" theory cited in *Nichols*. *See Nichols*, 2019 WL 4276995 at *1-2. The idea that individuals can be relieved of their mortgages due to the theories that only credit was lent to them or a financial crisis exists that voids mortgage obligations has been rejected by multiple courts. *Id.*; *see, e.g., Scarborough v. LaSalle Bank Natl'l Ass'n*, 460 F.App'x 743, 750-51 (10th Cir. 2012) (citing cases).

Plaintiffs' contention that *Nichols* is inapplicable here because it concerns a removal action rather than an arbitration award confirmation is of no consequence. The Court finds the previous court's determination regarding the validity of Sitcomm arbitrations relevant to this action. Further, Plaintiffs' reliance on *Teverbaugh* is misplaced; while the court in *Teverbaugh* initially confirmed a Sitcomm arbitration award and granted a writ of execution, both motions were vacated upon the court's own motion and are currently under advisement. *See Teverbaugh v. Lima One*, 1:19-CV-05482 (N.D. Ill. Aug. 22, 2019) (Doc. No. 18).

Regardless, as the Court finds that the arbitration documents have no legal validity, the award must be vacated pursuant to 9 U.S.C. § 10(a)(1). Plaintiffs have failed to demonstrate the

existence of a valid agreement to arbitrate with any of the Defendants, rendering the arbitration proceedings and associated award meritless. While the remaining Defendants did not join SLS in responding to Plaintiffs' motion, "[w]here a defending party establishes that a Plaintiff has no cause of action, the defense generally also inures to the benefit of a defaulting or unserved defendant." *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *see also McCarty v. Zapata Cnty.*, 243 F. App'x 792, 794 (5th Cir. 2007) (unpublished). Because the Court finds that Plaintiffs' claims are frivolous, this action can therefore be dismissed as to all Defendants.

## CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** that Plaintiffs' motion (Doc. No. 1) be **DENIED** and this action be dismissed with prejudice. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within **14 days** after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 22nd day of October, 2019.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE